JS-6

JOHN C. CRUDEN
Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice
VALERIE K. MANN (DC Bar No. 440744)
Environmental Enforcement Section
Environment & Natural Resources Division
United States Department of Justice
601 D Street, NW
Washington, D.C. 20004
Tel: (202) 616-8756
Fax: (202) 616-2427
Email: Valerie.mann@usdoj.gov

(see next page for names of additional counsel)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA, and the )
CALIFORNIA DEPARTMENT OF TOXIC )
SUBSTANCES CONTROL, )
                                 )
             Plaintiffs, )
                                 )    Civil Action No.
                                 )     2:15-cv-07619-R (AGRx)
        v. )
                                   )
SHELL OIL COMPANY, )    CONSENT DECREE
                                   )    DEL AMO FACILITY
                                   )    SUPERFUND SITE
                   Defendant. )    SOIL/NAPL OPERABLE UNIT
                                   )    (OU1)
                                   )

- - - - - - - - - - - - - - - - - - - - - - - - - - -

MARK A. RIGAU (State Bar No. 223610)
Environmental Defense Section
Environment and Natural Resources Division
United States Department of Justice
301 Howard Street, Suite 1050
San Francisco, California 94105
Tel: (415) 744-6487
Fax: (415) 744-6476
Email: mark.rigau@usdoj.gov
Attorneys for United States of America


KAMALA D. HARRIS
Attorney General of the State of California
MARK BRECKLER
Chief Assistant Attorney General
SALLY MAGNANI
Senior Assistant Attorney General
SARAH E. MORRISON
Supervising Deputy Attorney General
MEGAN K. HEY (State Bar No. 232345)
Deputy Attorney General
300 South Spring Street
Los Angeles, CA 90013
Tel: (213) 897-2611
Email: Megan.Hey@doj.ca.gov
Attorneys for Plaintiff State of California DTSC


MICHAEL R. LESLIE (State Bar No. 126820)
CALDWELL LESLIE & PROCTOR, PC
725 South Figueroa Street, 31st Floor
Los Angeles, California  90017-5524
Telephone: (213) 629-9040
Facsimile: (213) 629-9022
Email:  leslie@caldwell-leslie.com
Attorneys for Defendant Shell Oil Company

1

<u>TABLE OF CONTENTS</u>

I.      BACKGROUND ..............................................................................1
II.     JURISDICTION ..............................................................................6
III.    PARTIES BOUND ..........................................................................6
IV.     DEFINITIONS ................................................................................7
V.      GENERAL PROVISIONS .............................................................17
VI.     PERFORMANCE OF THE WORK BY SETTLING DEFENDANT .....20
VII.    REMEDY REVIEW ......................................................................31
VIII.   QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS .....32
IX.     ACCESS AND INSTITUTIONAL CONTROLS .........................36
X.      REPORTING REQUIREMENTS .................................................42
XI.     EPA APPROVAL OF PLANS, REPORTS, AND OTHER
        DELIVERABLES ...........................................................................45
XII.    PROJECT COORDINATORS ......................................................47
XIII.   PERFORMANCE GUARANTEE .................................................49
XIV.    CERTIFICATION OF COMPLETION ........................................60
XV.     EMERGENCY RESPONSE ..........................................................64
XVI.    PAYMENTS FOR RESPONSE COSTS .......................................66
XVII.   INDEMNIFICATION AND INSURANCE ...................................74
XVIII.  FORCE MAJEURE .......................................................................77
XIX.    DISPUTE RESOLUTION .............................................................80
XX.     STIPULATED PENALTIES .........................................................87
XXI.    COVENANTS BY PLAINTIFFS .................................................94
XXII.   COVENANTS BY SETTLING DEFENDANT AND SETTLING
        FEDERAL AGENCY ...................................................................103
XXIII.  EFFECT OF SETTLEMENT; CONTRIBUTION .......................108
XXIV.   ACCESS TO INFORMATION ...................................................111
XXV.    RETENTION OF RECORDS ......................................................113
XXVI.   NOTICES AND SUBMISSIONS ...............................................116
XXVII.  RETENTION OF JURISDICTION .............................................118
XXVIII. APPENDICES ............................................................................119
XXIX.   COMMUNITY INVOLVEMENT ..............................................119
XXX.    MODIFICATION ........................................................................120
XXXI.   LODGING AND OPPORTUNITY FOR PUBLIC COMMENT ...........121
XXXII.  SIGNATORIES/SERVICE ..........................................................121
XXXIII. FINAL JUDGMENT ...................................................................122

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.   BACKGROUND

A.   The United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), filed a complaint in this matter pursuant to Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9606, 9607.

B.   The United States in its complaint seeks, *inter alia*: (1) reimbursement of costs incurred by EPA and the Department of Justice ("DOJ") for response actions at the Del Amo Facility Superfund Site, in Los Angeles, California ("Site," more particularly described in Section IV hereto), together with accrued interest; and (2) performance of response actions by the Defendant at the Soil and Non-Aqueous Phase Liquid ("NAPL") Operable Unit ("Operable Unit 1" or "OU1") of the Del Amo Facility Superfund Site consistent with the National Contingency Plan, 40 C.F.R. Part 300 ("NCP").

C.   In accordance with the NCP and Section 121(f)(1)(F) of CERCLA, 42 U.S.C. § 9621(f)(1)(F), EPA notified the State of California (the "State") on November 29, 2011, of negotiations with potentially responsible parties ("PRPs") regarding the implementation of the remedial design and remedial action for Operable Unit 1 of the Site, and EPA has provided the State with an opportunity to participate in such negotiations and be a party to this Consent Decree.

D.     The State of California Department of Toxic Substances Control

("DTSC") has also filed a complaint against the Settling Defendant and the Settling

Federal Agency in this Court alleging that the Settling Defendant and the Settling

Federal Agency are liable to DTSC under Section 107 of CERCLA, 42 U.S.C. §

9607, for reimbursement of costs it has incurred, and will incur, for response

actions at OU1 of the Del Amo Facility Superfund Site together with accrued

interest.  Plaintiffs intend to file a motion in this Court to consolidate the separate

actions described in Paragraphs B and D of this Consent Decree.

E.     In accordance with Section 122(j)(1) of CERCLA, 42 U.S.C.

§ 9622(j)(1), EPA notified the National Oceanic and Atmospheric Administration

and the United States Fish and Wildlife Service on June 13, 2012, of negotiations

with PRPs regarding the release of hazardous substances that may have resulted in

injury to the natural resources under federal trusteeship and encouraged the trustees

to participate in the negotiation of this Consent Decree.

F.     The defendant that has entered into this Consent Decree, Shell Oil

Company ("Settling Defendant"), does not admit any liability to Plaintiffs arising

out of the transactions or occurrences alleged in the complaints, nor does it

acknowledge that the release or threatened release of hazardous substance(s) at or

// //

// //

2

from the Site constitutes an imminent and substantial endangerment to the public health or welfare or the environment.  Settling Federal Agency does not admit any liability arising out of the transactions or occurrences alleged in any counterclaim asserted by Settling Defendant or any claim by DTSC.

G.      Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, EPA placed the Site on the National Priorities List ("NPL"), set forth at 40 C.F.R. Part 300, Appendix B, by publication in the Federal Register on September 7, 2002, 67 Fed. Reg. 56,760.

H.      In response to a release or a substantial threat of a release of a hazardous substance(s) at or from the Site, Shell Oil Company and Dow Chemical Company, respondents under an Administrative Order on Consent ("AOC Respondents"), commenced on May 7, 1992, a Remedial Investigation and Feasibility Study ("RI/FS") for the Site pursuant to 40 C.F.R. § 300.430.

I.      AOC Respondents completed a Remedial Investigation ("RI") Report on July 7, 2007, and AOC Respondents completed a Feasibility Study ("FS") Report on January 15, 2010.

J.      Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, EPA published notice of the completion of the FS and of the proposed plan for remedial action on June 15, 2010, in a major local newspaper of general circulation.  EPA

provided an opportunity for written and oral comments from the public on the proposed plan for remedial action.  A copy of the transcript of the public meeting is available to the public as part of the administrative record upon which the Assistant Director, Superfund Division, EPA Region IX, based the selection of the response action.

K.     The decision by EPA on the remedial action to be implemented at Operable Unit 1 is embodied in a final Record of Decision ("ROD"), executed on September 30, 2011, on which DTSC has given its concurrence.  The ROD includes a responsiveness summary to the public comments.  Notice of the final plan was published in accordance with Section 117(b) of CERCLA, 42 U.S.C. § 9617(b).  EPA supplemented the ROD with a Memorandum to File dated July 26, 2013.

L.     Based on the information presently available to EPA and DTSC, EPA and DTSC believe that the Work will be properly and promptly conducted by Settling Defendant if conducted in accordance with the requirements of this Consent Decree and its appendices.

M.     Solely for the purposes of Section 113(j) of CERCLA, 42 U.S.C. § 9613(j), the remedy set forth in the ROD and the Work to be performed by Settling Defendant shall constitute a response action taken or ordered by the

4

President for which judicial review shall be limited to the administrative record.

N.       During the 1940s and 1950s, the Defense Plant Corporation ("DPC")

and the Rubber Reserve Company ("RRC") owned all or part of the Site and were

involved in activities relating to the possible generation, disposal, and release of

hazardous substances into the environment at and from the Site.  The General

Services Administration ("GSA") inherited any potential CERCLA liability

attributed to DPC and RRC activities through Reorganization Plan No. 1, June 30,

1957, 22 Fed. Reg. 4633; and as directed by the Reorganization Act of 1949, 63

Stat. 203, 5 U.S.C. § 901.  It is because of this presidential and legislative

delegation of responsibility that GSA is the Settling Federal Agency in this

Consent Decree.

O.       The Site also includes Operable Unit 2 ("OU2"), known as the Waste

Pits OU, for which a remedial action was selected by EPA in the Del Amo Waste

Pits Operable Unit Record of Decision on September 5, 1997, and Operable Unit 3

("OU3"), known as the Dual Site Groundwater OU, for which a remedial action

was selected by EPA in the Dual Site Groundwater Operable Unit Del Amo and

Montrose Chemical Superfund Sites Record of Decision, on March 1, 1999.

P.       The Parties recognize, and the Court by entering this Consent Decree

finds, that this Consent Decree has been negotiated by the Parties in good faith and

implementation of this Consent Decree will expedite the cleanup of the Site and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II.   JURISDICTION

1.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1367, and 1345, and 42 U.S.C. §§ 9606, 9607, and 9613(b).  This Court also has personal jurisdiction over Settling Defendant.  Solely for the purposes of this Consent Decree and the underlying complaints, Settling Defendant waives all objections and defenses that it may have to jurisdiction of the Court or to venue in this District.  Settling Defendant shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III.   PARTIES BOUND

2.      This Consent Decree applies to and is binding upon the United States and DTSC and upon Settling Defendant and its successors, and assigns.  Any change in ownership or corporate status of Settling Defendant including, but not limited to, any transfer of assets or real or personal property, shall in no way alter Settling Defendant's responsibilities under this Consent Decree.

3.      Settling Defendant shall provide a copy of this Consent Decree to each contractor hired to perform the Work required by this Consent Decree and to each person representing Settling Defendant with respect to the Site or the Work, and shall condition all contracts entered into hereunder upon performance of the Work in conformity with the terms of this Consent Decree.  Settling Defendant or its contractors shall provide written notice of the Consent Decree to all subcontractors hired to perform any portion of the Work required by this Consent Decree.  Settling Defendant shall nonetheless be responsible for ensuring that its contractors and subcontractors perform the Work in accordance with the terms of this Consent Decree.  With regard to the activities undertaken pursuant to this Consent Decree, each contractor and subcontractor shall be deemed to be in a contractual relationship with Settling Defendant within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

IV.    DEFINITIONS

4.      Unless otherwise expressly provided in this Consent Decree, terms used in this Consent Decree that are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations.  Whenever terms listed below are used in this Consent Decree or its appendices, the following definitions shall apply solely for purposes of this Consent Decree:

"2014 Settlement Agreement" shall mean the 2014 Settlement Agreement and Order on Consent entered in *Shell Oil Company v. United States*, Civil Case No. 93-4584 MRP (C.D. Cal.).

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601-9675.

"Consent Decree" shall mean this Consent Decree and all appendices attached hereto (listed in Section XXVIII).  In the event of conflict between this Consent Decree and any appendix, this Consent Decree shall control.

"Day" or "day" shall mean a calendar day unless expressly stated to be a working day.  The term "working day" shall mean a day other than a Saturday, Sunday, or federal or state holiday.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal or state holiday, the period shall run until the close of business of the next working day.

"Del Amo Superfund Site Special Account" shall mean the special account, within the EPA Hazardous Substance Superfund, established for the Del Amo Superfund Site by EPA pursuant to Section 122(b)(3) of CERCLA, 42 U.S.C. § 9622(b)(3).

8

"DOJ" shall mean the United States Department of Justice and its successor departments, agencies, or instrumentalities.

"DTSC" shall mean the California Department of Toxic Substances Control, and its successor departments, agencies, or instrumentalities.

"DTSC Future Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the DTSC incurs in reviewing or developing plans, reports, and other deliverables submitted pursuant to this Consent Decree, in overseeing implementation of the Work, or otherwise implementing, overseeing, or enforcing this Consent Decree, including, but not limited to, payroll costs, contractor costs, travel costs, laboratory costs, the costs incurred pursuant to Sections VII (Remedy Review), IX (Access and Institutional Controls) (including, but not limited to, the cost of attorney time and any monies paid to secure access and/or to secure, implement, monitor, maintain, or enforce Institutional Controls including, but not limited to, the amount paid as just compensation for a property interest), and XV (Emergency Response), Paragraph 45 (Funding for Work Takeover), and Section XXIX (Community Involvement).  DTSC Future Response Costs shall also include all Interest on those DTSC Past Response Costs that has accrued pursuant to 42 U.S.C. § 9607(a) during the period from September 30, 2013 to the Effective Date.

9

"DTSC Past Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that DTSC paid at or in connection with Operable Unit 1 through September 30, 2013.

"Effective Date" shall mean the date upon which this Consent Decree is entered by the Court as recorded on the Court docket, or, if the Court instead issues an order approving the Consent Decree, the date such order is recorded on the Court docket.

"EPA" shall mean the United States Environmental Protection Agency and its successor departments, agencies, or instrumentalities.

"EPA Hazardous Substance Superfund" shall mean the Hazardous Substance Superfund established by the Internal Revenue Code, 26 U.S.C. § 9507.

"Future Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States incurs in reviewing or developing plans, reports, and other deliverables submitted pursuant to this Consent Decree, in overseeing implementation of the Work, or otherwise implementing, overseeing, or enforcing this Consent Decree, including, but not limited to, payroll costs, contractor costs, travel costs, laboratory costs, the costs incurred pursuant to Sections VII (Remedy Review), IX (Access and Institutional Controls) (including, but not limited to, the cost of attorney time and any monies paid to secure access

and/or to secure, implement, monitor, maintain, or enforce Institutional Controls including, but not limited to, the amount paid as just compensation for a property interest), and XV (Emergency Response), Paragraph 45 (Funding for Work Takeover), and Section XXIX (Community Involvement).  Future Response Costs shall also include all Interim Response Costs, and all Interest on those Past Response Costs Settling Defendant has agreed to pay under this Consent Decree that has accrued pursuant to 42 U.S.C. § 9607(a) during the period from April 1, 2013 to the Effective Date.

"Institutional Controls" or "ICs" shall mean Proprietary Controls and state or local laws, regulations, ordinances, zoning restrictions, or other governmental controls, or notices that: (a) limit land, water, and/or resource use to minimize the potential for human exposure to Waste Material at or in connection with the Site; (b) limit land, water, and/or resource use to implement, ensure non-interference with, or ensure the protectiveness of the Remedial Action; and/or (c) provide information intended to modify or guide human behavior at or in connection with the Site.

"Institutional Control Implementation and Assurance Plan" or "ICIAP" shall mean the plan for implementing, maintaining, monitoring, and reporting on the Institutional Controls set forth in the ROD, prepared in accordance with the Statement of Work ("SOW").

"Interim Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, (a) paid by the United States in connection with Operable Unit 1 between September 30, 2011 and the Effective Date, or (b) incurred prior to the Effective Date but paid after that date.

"Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year.

"National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

"Operable Unit 1" or "OU1" shall mean the Soil and NAPL Operable Unit of the Del Amo Superfund Site, but not including the areas reflected in the ROD as Properties 29 and 34.

"Operation and Maintenance" or "O&M" shall mean all activities required to maintain the effectiveness of the Remedial Action as required under the

Operation and Maintenance Plan approved or developed by EPA pursuant to Section VI (Performance of the Work by Settling Defendant) and the SOW, and maintenance, monitoring, and enforcement of Institutional Controls as provided in the ICIAP.

"Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper or lower case letter.

"Parties" shall mean the United States, DTSC, and Settling Defendant.

"Past Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States paid at or in connection with the Site, except for OU3, through September 30, 2011, plus Interest on all such costs that has accrued pursuant to 42 U.S.C. § 9607(a) through such date.

"Performance Standards" shall mean the cleanup standards and other measures of achievement of the goals of the Remedial Action, set forth in the ROD and the SOW and any modified standards established pursuant to this Consent Decree.

"Plaintiffs" shall mean the United States and DTSC.

"Proprietary Controls" shall mean easements or covenants running with the land that (a) limit land, water, or resource use and/or provide access rights and (b)

are created pursuant to common law or statutory law by an instrument that is recorded in the appropriate land records office.

"RCRA" shall mean the Solid Waste Disposal Act, 42 U.S.C. §§ 6901-6992 (also known as the Resource Conservation and Recovery Act).

"Record of Decision" or "ROD" shall mean the EPA Record of Decision relating to the Soil and NAPL Operable Unit at the Site signed on September 30, 2011, by the Assistant Director, Superfund Division, EPA Region IX, and all attachments thereto, and revised as per Memo to File dated July 26, 2013.  The ROD is attached as Appendix A.

"Remedial Action" shall mean all activities Settling Defendant is required to perform under the Consent Decree to implement the ROD, in accordance with the SOW, the final approved remedial design submission, the approved Remedial Action Work Plan, and other plans approved by EPA, including implementation of Institutional Controls, until the Performance Standards are met, and excluding performance of the Remedial Design, O&M, and the activities required under Section XXV (Retention of Records).

"Remedial Action Work Plan" shall mean the document developed pursuant to Paragraph 11 (Remedial Action) and approved by EPA, and any modifications thereto.

"Remedial Design" shall mean those activities to be undertaken by Settling Defendant to develop the final plans and specifications for the Remedial Action pursuant to the Remedial Design Work Plan.

"Remedial Design Work Plan" shall mean the document developed pursuant to Paragraph 10 (Remedial Design) and approved by EPA, and any modifications thereto.

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

"Settling Defendant" shall mean Shell Oil Company.

"Settling Defendant's Future Response Costs" shall mean all necessary response costs Settling Defendant incurs in implementing this Consent Decree, including, but not limited to, the costs incurred pursuant to Section VI (Performance of the Work by Settling Defendant), Section VII (Remedy Review), Section IX (Access and Institutional Controls), and Section XIII (Performance Guarantee).

"Settling Defendant's Past Response Costs" shall mean all necessary response costs Settling Defendant has incurred in connection with Operable Unit 1 through December 31, 2012.

"Settling Federal Agency" shall mean the General Services Administration ("GSA") and its successor departments, agencies, or instrumentalities.

"Site" shall mean the Del Amo Facility Superfund Site, encompassing approximately 280 acres, which includes the former location of a synthetic rubber plant, located in the Harbor Gateway area of Los Angeles, California, and depicted generally on the map attached as Appendix C.

"State" shall mean the State of California.

"Statement of Work" or "SOW" shall mean the statement of work for implementation of the Remedial Design, Remedial Action, and O&M at Operable Unit 1, as set forth in Appendix B to this Consent Decree and any modifications made in accordance with this Consent Decree.

"Supervising Contractor" shall mean the principal contractor retained by Settling Defendant to supervise and direct the implementation of the Work under this Consent Decree.

"United States" shall mean the United States of America and each department, agency, and instrumentality of the United States, including EPA and the Settling Federal Agency.

"Waste Material" shall mean (1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (2) any pollutant or

contaminant under Section 101(33) of CERCLA, 42 U.S.C. § 9601(33); (3) any

"solid waste" under Section 1004(27) of RCRA, 42 U.S.C. § 6903(27); and (4) any

"hazardous substance" under California Health and Safety Code Section 25316.

"Work" shall mean all activities and obligations Settling Defendant is

required to perform under this Consent Decree, except the activities required under

Section XXV (Retention of Records).

## V.    GENERAL PROVISIONS

5.    <u>Objectives of the Parties</u>.  The objectives of the Parties in entering

into this Consent Decree are to protect public health or welfare or the environment

by the design and implementation of response actions at Operable Unit 1 by

Settling Defendant, to pay response costs of the Plaintiffs, to acknowledge Settling

Federal Agency's obligation to pay (through reimbursement to Settling Defendant

under the 2014 Settlement Agreement) a portion of Plaintiffs' response costs and

other recoverable response costs incurred by Settling Defendant hereunder, and to

resolve the claims of Plaintiffs against Settling Defendant and the claims of DTSC

and Settling Defendant that have been or could have been asserted against the

United States with regard to Operable Unit 1 as provided in this Consent Decree.

6.    <u>Commitments by Settling Defendant and Settling Federal Agency</u>.

Settling Defendant shall finance and perform the Work in accordance with this

Consent Decree, the ROD, the SOW, and all work plans and other plans, standards, specifications, and schedules set forth in this Consent Decree or developed by Settling Defendant and approved by EPA, after reasonable opportunity for review and comment by DTSC, pursuant to this Consent Decree.  Settling Defendant shall pay the United States for Past Response Costs and Future Response Costs, and Settling Defendant shall pay DTSC for the DTSC Past Response Costs and DTSC Future Response Costs, as provided in this Consent Decree.  Settling Federal Agency shall reimburse Settling Defendant for a portion of: Past Response Costs and Future Response Costs, DTSC Past Response Costs and DTSC Future Response Costs, and Settling Defendant's Future Response Costs, pursuant to the 2014 Settlement Agreement.

7.     Compliance With Applicable Law.  All activities undertaken by Settling Defendant pursuant to this Consent Decree shall be performed in accordance with the requirements of all applicable federal and state laws and regulations.  Settling Defendant must also comply with all applicable or relevant and appropriate requirements of all federal and state environmental laws as set forth in the ROD and the SOW.  The activities conducted pursuant to this Consent Decree, if approved by EPA, shall be deemed to be consistent with the NCP.

8.    Permits.

a.    As provided in Section 121(e) of CERCLA, 42 U.S.C. § 9621(e), and Section 300.400(e) of the NCP, no permit shall be required for any portion of the Work conducted entirely on-Site (i.e., within the areal extent of contamination or in very close proximity to the contamination and necessary for implementation of the Work).  Where any portion of the Work that is not on-Site requires a federal or state permit or approval, Settling Defendant shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.

b.    Settling Defendant may seek relief under the provisions of Section XVIII (Force Majeure) for any delay in the performance of the Work resulting from a failure to obtain, or a delay in obtaining, any permit or approval referenced in Paragraph 8.a and required for the Work, provided that it has submitted timely and complete applications and taken all other actions necessary to obtain all such permits or approvals.

c.    This Consent Decree is not, and shall not be construed to be, a permit issued pursuant to any federal or state statute or regulation.

## VI.   PERFORMANCE OF THE WORK BY SETTLING DEFENDANT

9.   <u>Selection of Supervising Contractor</u>.

a.   All aspects of the Work to be performed by Settling Defendant pursuant to Sections VI (Performance of the Work by Settling Defendant), VII (Remedy Review), VIII (Quality Assurance, Sampling, and Data Analysis), IX (Access and Institutional Controls), and XV (Emergency Response) shall be under the direction and supervision of the Supervising Contractor, the selection of which shall be subject to disapproval by EPA after a reasonable opportunity for review and comment by DTSC.  Within ten days after the lodging of this Consent Decree, Settling Defendant shall notify EPA and DTSC in writing of the name, title, and qualifications of any contractor proposed to be the Supervising Contractor.  With respect to any contractor proposed to be Supervising Contractor, Settling Defendant shall demonstrate that the proposed contractor has a quality assurance system that complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs" (American National Standard, January 5, 1995), by submitting a copy of the proposed contractor's Quality Management Plan ("QMP").  The QMP should be prepared in accordance with "EPA Requirements for Quality Management Plans (QA/R-2)" (EPA/240/B-01/002, March 2001, reissued May 2006) or equivalent documentation as determined by

EPA.  EPA will issue a notice of disapproval or an authorization to proceed regarding hiring of the proposed contractor.  If at any time thereafter, Settling Defendant proposes to change a Supervising Contractor, Settling Defendant shall give such notice to EPA and DTSC and must obtain an authorization to proceed from EPA, after a reasonable opportunity for review and comment by DTSC, before the new Supervising Contractor performs, directs, or supervises any Work under this Consent Decree.  Settling Defendant shall demonstrate that the proposed replacement contractor has a quality assurance system that complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs" (American National Standard, January 5, 1995), by submitting a copy of the proposed contractor's QMP.  The QMP should be prepared in accordance with "EPA Requirements for Quality Management Plans (QA/R-2)" (EPA/240/B-01/002, March 2001, reissued May 2006) or equivalent documentation as determined by EPA.

b.      If EPA disapproves a proposed Supervising Contractor, EPA will notify Settling Defendant in writing.  Settling Defendant shall submit to EPA and DTSC a list of contractors, including the qualifications of each contractor that would be acceptable to them, within 30 days after receipt of EPA's disapproval of the contractor previously proposed.  EPA will provide written notice of the names

of any contractor(s) that it disapproves and an authorization to proceed with respect to any of the other contractors.  Settling Defendant may select any contractor from that list that is not disapproved and shall notify EPA and DTSC of the name of the contractor selected within 21 days after EPA's authorization to proceed.

c.      If EPA fails to provide written notice of its authorization to proceed or disapproval as provided in this Paragraph and this failure prevents Settling Defendant from meeting one or more deadlines in a plan approved by EPA pursuant to this Consent Decree, Settling Defendant may seek relief under Section XVIII (Force Majeure).

10.    Remedial Design.

a.      Within 90 days after EPA's issuance of an authorization to proceed pursuant to Paragraph 9 (Selection of Supervising Contractor), Settling Defendant shall submit to EPA and DTSC a work plan for the design of the Remedial Action at Operable Unit 1 ("Remedial Design Work Plan").  The Remedial Design Work Plan shall provide for design of the remedy set forth in the ROD, in accordance with the SOW and for achievement of the Performance Standards and other requirements set forth in the ROD, this Consent Decree, and/or the SOW.  Upon its approval by EPA, after a reasonable opportunity for

22

review and comment by DTSC, the Remedial Design Work Plan shall be incorporated into and enforceable under this Consent Decree. Within 30 days after EPA's approval of the Remedial Design Work Plan, Settling Defendant shall submit to EPA and DTSC a Health and Safety Plan/Contingency Plan for field design activities that conforms to the applicable Occupational Safety and Health Administration and EPA requirements including, but not limited to, 29 C.F.R. § 1910.120. Also within 120 days after EPA's approval of the Remedial Design Work Plan, Settling Defendant shall submit to EPA and DTSC the Pre-Design Investigation Work Plan.

   b. The Remedial Design Work Plan shall include plans and schedules for implementation of all remedial design and pre-design tasks identified in the SOW, including, but not limited to, plans and schedules for the completion of:

    (1) Pre-Design Investigation Work Plan(s) and Report(s) (including, but not limited to, a Quality Assurance Project Plan in accordance with Section VIII (Quality Assurance, Sampling, and Data Analysis)). Pre-design investigation activities will include activities necessary to assess the area receiving a remedial component;

23

       (2)     bench/pilot study work plan(s) and report(s) to address data gaps and/or obtain new data to allow pre-design activities to proceed;

       (3)     work-specific health and safety plans for any design investigation field work;

       (4)     an Institutional Controls Implementation and Assurance Plan ("ICIAP");

       (5)     a preliminary design submission; and

       (6)     a pre-final and final design.

In addition, the Remedial Design Work Plan shall include a schedule for completion of the Remedial Action Work Plan.

c.     Upon approval of the Remedial Design Work Plan by EPA, after a reasonable opportunity for review and comment by DTSC, and submission of the Health and Safety Plan/Contingency Plan for all field activities to EPA and DTSC, Settling Defendant shall implement the Remedial Design Work Plan. Settling Defendant shall submit to EPA and DTSC all plans, reports, and other deliverables required under the approved Remedial Design Work Plan in accordance with the approved schedule for review and approval pursuant to Section XI (EPA Approval of Plans, Reports, and Other Deliverables). Unless otherwise directed by EPA, Settling Defendant shall not commence further

Remedial Design activities at Operable Unit 1 prior to approval of the Remedial Design Work Plan.

d.     The preliminary design submission shall include, at a minimum, the following: (1) design criteria; (2) results of bench/pilot studies; (3) results of pre-design investigation and pre-design work; (4) value engineering analysis; (5) sustainability evaluation; (6) project delivery strategy; (7) preliminary plans, drawings, and sketches; (8) required specifications in outline form; and (9) preliminary construction schedule.

e.     The pre-final/final design submission shall include, at a minimum, the following: (1) final plans and specifications; (2) Operation and Maintenance Plan; (3) Construction Quality Assurance Plan ("CQAP"); and (4) schedule.  The CQAP, which shall detail the approach to quality assurance during construction activities at Operable Unit 1, shall specify a quality assurance official, independent of the Supervising Contractor, to conduct a quality assurance program during the construction phase of the project.

11.     Remedial Action.

a.     Within 120 days after the approval of the final design submission, Settling Defendant shall submit to EPA and DTSC a work plan for the performance of the Remedial Action at Operable Unit 1 ("Remedial Action Work

Plan"). The Remedial Action Work Plan shall provide for construction and implementation of the remedy set forth in the ROD and achievement of the Performance Standards, in accordance with this Consent Decree, the ROD, the SOW and the plans and specifications developed in accordance with the Remedial Design Work Plan and approved by EPA. Upon its approval by EPA, after a reasonable opportunity for review and comment by DTSC, the Remedial Action Work Plan shall be incorporated into and enforceable under this Consent Decree. As part of the Remedial Action Work Plan, Settling Defendant shall include a discussion of, and schedule for, submission of associated deliverables (see Section VI.A.2. of the SOW).

        b.    The Remedial Action Work Plan shall include the following:

        (1)    schedule for completion of the Remedial Action;

        (2)    method for selection of the contractor;

        (3)    schedule for developing and submitting any other required Remedial Action plans;

        (4)    methods for satisfying permitting requirements, if applicable;

        (5)    schedule for finalizing the Operation and Maintenance Plan;

(6)     identified members of the Remedial Action team;

(7)     schedule for preparation of a site-wide management plan;

(8)     schedule for preparation of a performance monitoring and evaluation plan;

(9)     schedule for preparation of construction-specific health and safety plans/contingency plans;

(10)    schedule for finalizing a CQAP; and

(11)    schedule for preparation of a waste transportation and off-site disposal plan.

c.     Upon approval of the Remedial Action Work Plan by EPA, after a reasonable opportunity for review and comment by DTSC, Settling Defendant shall implement the activities required under the Remedial Action Work Plan.  Settling Defendant shall submit to EPA and DTSC all reports and other deliverables required under the approved Remedial Action Work Plan in accordance with the approved schedule for review and approval pursuant to Section XI (EPA Approval of Plans, Reports, and Other Deliverables).  Unless otherwise directed by EPA, Settling Defendant shall not commence physical Remedial Action activities at Operable Unit 1 prior to approval of the Remedial Action Work Plan.

27

12.     Settling Defendant shall continue to implement the Remedial Action until the Performance Standards are achieved.  Settling Defendant shall implement O&M for so long thereafter as is required by this Consent Decree and the SOW.

13.     <u>Modification of SOW or Related Work Plans</u>.

a.     If EPA, following reasonable opportunity for review and comment by DTSC, determines that it is necessary to modify the work specified in the SOW and/or in work plans developed pursuant to the SOW to achieve and maintain the Performance Standards or to carry out and maintain the effectiveness of the remedy set forth in the ROD, and such modification is consistent with the scope of the remedy set forth in the ROD, then EPA may issue such modification in writing and shall notify Settling Defendant of such modification.  For the purposes of this Paragraph and Paragraphs 47 (Completion of the Remedial Action) and 48 (Completion of the Work) only, the "scope of the remedy set forth in the ROD" is composed of the ROD requirements, including but not limited to the following elements, as described more specifically in the ROD: institutional controls ("ICs"), including informational outreach and building permit review for all of OU1, a General Plan footnote and restrictive covenants for Areas 2, 4-17, 19, 20, 22-24, 28, 30, 32, 33, 35, and 36; capping for VOC- and non-VOC-impacted shallow outdoor soils on properties 2, 16, 28, and 35; building engineering controls ("BECs") at property 16; soil vapor extraction ("SVE") for VOC-impacted outdoor

shallow soils at properties 6, 11, and 23, and for VOC-impacted soil under the building on property 23; SVE for vadose zone soil in NAPL Source Area SA-6, located on property 23, a NAPL-impacted groundwater contamination source area; in situ chemical oxidation ("ISCO") and SVE for deep soil and groundwater in NAPL source areas SA-3, SA-11, and SA-12; and excavation and off-site disposal, or ICs and capping, SVE, or BECs, for areas of Site-related contamination, as described in Section 12.2.8 of the ROD, that are encountered after the Effective Date of this Consent Decree.  If Settling Defendant objects to the modification it may, within 30 days after EPA's notification, seek dispute resolution under Paragraph 68 (Record Review).

        b.      The SOW and/or related work plans shall be modified: (1) in accordance with the modification issued by EPA; or (2) if Settling Defendant invokes dispute resolution, in accordance with the final resolution of the dispute. The modification shall be incorporated into and enforceable under this Consent Decree, and Settling Defendant shall implement all work required by such modification.  Settling Defendant shall incorporate the modification into the Remedial Design or Remedial Action Work Plan under Paragraph 10 (Remedial Design) or Paragraph 11 (Remedial Action), as appropriate.

c.      Nothing in this Paragraph shall be construed to limit EPA's authority to require performance of further response actions as otherwise provided in this Consent Decree.

d.      Nothing in this Paragraph shall be construed to limit the State's authority to require performance of further response actions as provided by California or federal law.

14.     Nothing in this Consent Decree, the SOW, or the Remedial Design or Remedial Action Work Plans constitutes a warranty or representation of any kind by Plaintiffs that compliance with the work requirements set forth in the SOW and the Work Plans will achieve the Performance Standards.

15.     <u>Off-Site Shipment of Waste Material</u>.

a.      Settling Defendant may ship Waste Material from the Site to an off-Site facility only if it verifies, prior to any shipment, that the off-Site facility is operating in compliance with the requirements of Section 121(d)(3) of CERCLA, 42 U.S.C. § 9621(d)(3), and 40 C.F.R. § 300.440, by obtaining a determination from EPA that the proposed receiving facility is operating in compliance with 42 U.S.C. § 9621(d)(3) and 40 C.F.R. § 300.440.

b.      Settling Defendant may ship Waste Material from the Site to an out-of-state waste management facility only if, prior to any shipment, it provides

written notice to the appropriate state environmental official in the receiving facility's state and to the EPA Project Coordinator.  This notice requirement shall not apply to any off-Site shipments when the total quantity of all such shipments will not exceed ten cubic yards.  The written notice shall include the following information, if available: (1) the name and location of the receiving facility; (2) the type and quantity of Waste Material to be shipped; (3) the schedule for the shipment; and (4) the method of transportation.  Settling Defendant also shall notify the state environmental official referenced above and the EPA Project Coordinator of any major changes in the shipment plan, such as a decision to ship the Waste Material to a different out-of-state facility.  Settling Defendant shall provide the written notice after the award of the contract for Remedial Action construction and before the Waste Material is shipped.

## VII.   REMEDY REVIEW

16.   <u>Periodic Review</u>.  Settling Defendant shall conduct any studies and investigations that EPA requests in order to permit EPA to conduct reviews of whether the Remedial Action is protective of human health and the environment at least every five years as required by Section 121(c) of CERCLA, 42 U.S.C. § 9621(c), and any applicable regulations.

17.     EPA Selection of Further Response Actions.  If EPA determines, at any time, that the Remedial Action is not protective of human health and the environment, EPA may select further response actions for the Site in accordance with the requirements of CERCLA and the NCP.

18.     Opportunity to Comment.  Settling Defendant and, if required by Sections 113(k)(2) or 117 of CERCLA, 42 U.S.C. § 9613(k)(2) or 9617, the public, will be provided with an opportunity to comment on any further response actions proposed by EPA as a result of the review conducted pursuant to Section 121(c) of CERCLA and to submit written comments for the record during the comment period.

VIII.   QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS

19.     Quality Assurance.

a.     Settling Defendant shall use quality assurance, quality control, and chain of custody procedures for all treatability, design, compliance, and monitoring samples in accordance with "EPA Requirements for Quality Assurance Project Plans (QA/R5)" (EPA/240/B-01/003, March 2001, reissued May 2006), "Guidance for Quality Assurance Project Plans (QA/G-5)" (EPA/240/R-02/009, December 2002), and subsequent amendments to such guidelines upon notification

by EPA to Settling Defendant of such amendment.  Amended guidelines shall apply only to procedures conducted after such notification.

        b.        Prior to the commencement of any monitoring project under this Consent Decree, Settling Defendant shall submit to EPA for approval, after a reasonable opportunity for review and comment by DTSC, a Quality Assurance Project Plan ("QAPP") that is consistent with the SOW, the NCP, and applicable guidance documents.  If relevant to the proceeding, the Parties agree that validated sampling data generated in accordance with the QAPP(s) and reviewed and approved by EPA shall be admissible as evidence, without objection, in any proceeding under this Consent Decree.  Settling Defendant shall ensure that EPA and DTSC personnel and their authorized representatives are allowed access at reasonable times to all laboratories utilized by Settling Defendant in implementing this Consent Decree.  In addition, Settling Defendant shall ensure that such laboratories shall analyze all samples submitted by EPA pursuant to the QAPP for quality assurance monitoring.  Settling Defendant shall ensure that the laboratories it utilizes for the analysis of samples taken pursuant to this Consent Decree perform all analyses according to accepted EPA methods.  Accepted EPA methods consist of those methods that are documented in the "USEPA Contract Laboratory Program Statement of Work for Inorganic Analysis, ILM05.4," and the "USEPA Contract Laboratory Program Statement of Work for Organic Analysis,

SOM01.2," and any amendments made thereto during the course of the implementation of this Consent Decree; however, upon approval by EPA, after opportunity for review and comment by DTSC, Settling Defendant may use other analytical methods that are as stringent as or more stringent than the CLP-approved methods.  Settling Defendant shall ensure that all laboratories it uses for analysis of samples taken pursuant to this Consent Decree participate in an EPA or EPA-equivalent quality assurance/quality control ("QA/QC") program.  Settling Defendant shall use only laboratories that have a documented Quality System that complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs" (American National Standard, January 5, 1995), and "EPA Requirements for Quality Management Plans (QA/R-2)" (EPA/240/B-01/002, March 2001, reissued May 2006) or equivalent documentation as determined by EPA.  EPA may consider laboratories accredited under the National Environmental Laboratory Accreditation Program ("NELAP") as meeting the Quality System requirements.  Settling Defendant shall ensure that all field methodologies utilized in collecting samples for subsequent analysis pursuant to this Consent Decree are conducted in accordance with the procedures set forth in the QAPP approved by EPA.

20.     Upon request, Settling Defendant shall allow split or duplicate samples to be taken by EPA and DTSC or their authorized representatives. Settling Defendant shall notify EPA and DTSC not less than 28 days in advance of any sample collection activity unless shorter notice is agreed to by EPA. Schedules within workplans submitted to EPA and DTSC can be considered to constitute notification.  In addition, EPA and DTSC shall have the right to take any additional samples that EPA or DTSC deems necessary.  EPA and DTSC shall notify Settling Defendant not less than 14 days in advance of any sample collection activity being performed as part of oversight of Settling Defendant's implementation of the Work, unless a different time frame is agreed to by EPA or DTSC and Settling Defendant.  Upon request, EPA and DTSC shall allow Settling Defendant to take split or duplicate samples of any samples they take as part of Plaintiffs' oversight of Settling Defendant's implementation of the Work.

21.     Settling Defendant shall submit to EPA and DTSC one electronic copy and one hard copy of the results of all sampling and/or tests or other data obtained or generated by or on behalf of Settling Defendant with respect to Operable Unit 1 and/or the implementation of this Consent Decree unless EPA agrees otherwise.

22.     Notwithstanding any provision of this Consent Decree, the United States and the State retain all of their information gathering and inspection

35

authorities and rights, including enforcement actions related thereto, under

CERCLA, RCRA, and any other applicable statutes or regulations.

## IX.    ACCESS AND INSTITUTIONAL CONTROLS

23.    If the Site, or any other real property where access or land/water use

restrictions are needed to implement the Work, is owned or controlled by Settling

Defendant:

a.    Settling Defendant shall, commencing on the date of lodging of

the Consent Decree, provide the United States, DTSC, and their representatives,

contractors, and subcontractors, with access at all reasonable times to the Site, or

such other real property, to conduct any activity regarding the Consent Decree

including, but not limited to, the following activities:

(1)    Monitoring the Work;

(2)    Verifying any data or information submitted to the

United States or DTSC;

(3)    Conducting investigations regarding contamination at or

near the Site;

(4)    Obtaining samples;

(5)     Assessing the need for, planning, or implementing additional response actions at or near the Site;

(6)     Assessing implementation of quality assurance and quality control practices as defined in the approved CQAP;

(7)     Implementing the Work pursuant to the conditions set forth in Paragraph 88 (Work Takeover);

(8)     Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Settling Defendant or its agents, consistent with Section XXIV (Access to Information);

(9)     Assessing Settling Defendant's compliance with the Consent Decree;

(10)   Determining whether the Site or other real property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted under the Consent Decree; and

(11)   Implementing, monitoring, maintaining, reporting on, and enforcing any Institutional Controls and the requirements of the ICIAP.

24.     If the Site, or any other real property where access and/or land/water use restrictions are needed to implement the Work is owned or controlled by persons other than Settling Defendant:

a.      Settling Defendant shall use best efforts to secure from such persons:

(1)      an agreement to provide access thereto for the United States, DTSC, and Settling Defendant, and their representatives, contractors, and subcontractors, to conduct any activity regarding the Consent Decree including, but not limited to, the activities listed in Paragraph 23.a; and

(2)      the execution and recordation in the appropriate land records office of Proprietary Controls, in substantially the form attached hereto as Appendix D, that (i) grant a right of access to conduct any activity regarding the Consent Decree including, but not limited to, those activities listed in Paragraph 23.a, and (ii) grant the right to enforce the land/water use restrictions set forth in Section 12 of the ROD, including Table 12-1, including, but not limited to, the specific restrictions listed therein and any land/water use restrictions listed in the ICIAP, after approval by EPA.  The Proprietary Controls shall be granted to DTSC and its representatives.  The Proprietary Controls shall include a designation that EPA is a third party beneficiary, and may include a designation that Settling Defendant is a third party beneficiary, allowing EPA and Settling Defendant to maintain the

right to enforce the Proprietary Controls without acquiring an interest in real property.

b.     Within 240 days after EPA's approval of the ICIAP, Settling Defendant shall submit to EPA for review and approval, and to DTSC for execution, regarding each such property: (i) Proprietary Controls executed by each property owner specified in the ICIAP; and (ii) a current title insurance commitment, title survey, or other evidence of title acceptable to EPA, that shows title to the land affected by the Proprietary Controls to be free and clear of prior liens and encumbrances pursuant to Section III.A.4.d. of the SOW (except when EPA, following reasonable opportunity for review and comment by DTSC, waives the release or subordination of such prior liens or encumbrances, including but not limited to when, despite best efforts, Settling Defendant is unable to obtain release or subordination of such prior liens or encumbrances).

c.     Within 90 days of the later of (i) EPA's approval and acceptance of the title evidence, or (ii) DTSC's execution of the Proprietary Controls, Settling Defendant shall update the title search and, if it is determined that nothing has occurred since the effective date of the commitment, or other title evidence, to affect the title adversely, record or arrange for the property owner to record the Proprietary Controls with the appropriate land records office.  Within 30 days after the recording of the Proprietary Controls, Settling Defendant shall

provide EPA with a final title insurance policy, title survey, or other final evidence

of title acceptable to EPA, and a certified copy of the original recorded Proprietary

Controls showing the clerk's recording stamps.

25.    For purposes of Paragraphs 24.a and 24.b, "best efforts" means the

efforts that a reasonable person in the position of Settling Defendant would use so

as to achieve the goal in a timely manner, including the cost of employing

professional assistance and the payment of reasonable sums of money to secure

Proprietary Controls, agreements, releases, subordinations, modifications or

relocation of liens or other prior encumbrances that affect the title, as applicable.

If, within 120 days after EPA's approval of the ICIAP, Settling Defendant has not:

(a) obtained agreements to provide access, or record Proprietary Controls, as

required by Paragraph 24.a(1) or 24.a(2); or (b) obtained, pursuant to Paragraph

24.b, agreements from the holders of prior liens or encumbrances to release or

subordinate such liens or encumbrances to the Proprietary Controls pursuant to

Section III.A.4.d. of the SOW, Settling Defendant shall promptly notify the United

States and DTSC in writing, and shall include in that notification a summary of the

steps that Settling Defendant has taken to attempt to comply with Paragraph 24.

The United States may, as it deems appropriate, assist Settling Defendant in

obtaining access, agreements to restrict land/water use, Proprietary Controls, or the

release or subordination of a prior lien or encumbrance.  Settling Defendant shall

reimburse the United States under Section XVI (Payments for Response Costs) for all costs incurred, direct or indirect, by the United States in obtaining such access, agreements to restrict land/water use, Proprietary Controls, and/or the necessary release/subordination of prior liens or encumbrances including, but not limited to, the cost of attorney time and the amount of monetary consideration paid or just compensation for a property interest.

26.     If EPA, following reasonable opportunity for review and comment by DTSC, determines that any other Institutional Controls, other than the General Plan footnote described in Section III.A.3 of the SOW, in the form of state or local laws, regulations, ordinances, zoning restrictions, or other governmental controls are needed at or in connection with the Site, Settling Defendant shall cooperate with EPA's and DTSC's efforts to secure and ensure compliance with such governmental controls.

27.     Notwithstanding any provision of the Consent Decree, the United States and the State retain all of their access authorities and rights, as well as all their rights to require Institutional Controls, including enforcement authorities related thereto, under CERCLA, RCRA, and any other applicable statute or regulations.

1

2

3        X.     REPORTING REQUIREMENTS

4        28.     In addition to any other requirement of this Consent Decree, Settling

5   Defendant shall submit to EPA and DTSC one electronic copy each of written

6   progress reports that: (a) are submitted monthly (or less frequently if agreed to by

7   the Parties) while design or construction activities are occurring, and quarterly (or

8   less frequently if agreed to by the Parties) during other periods of Work;

9   (b) describe the actions that have been taken toward achieving compliance with

10  this Consent Decree during the previous reporting period; (c) identify all plans,

11  reports, and other deliverables required by this Consent Decree completed and

12  submitted during the previous reporting period; (d) describe all actions, including,

13  but not limited to, data collection and implementation of work plans, that are

14  scheduled for the next two reporting periods and provide other information relating

15  to the progress of the Work, including, as appropriate, critical path diagrams such

16  as Gantt charts and Pert charts (which shall only be required until construction is

17  complete); (e) include information regarding percentage of completion, unresolved

18  delays encountered or anticipated that may affect the future schedule for

19  implementation of the Work, and a description of efforts made to mitigate those

20  delays or anticipated delays; (f) include any modifications to the work plans or

21  other schedules that Settling Defendant has proposed to EPA or that have been

22  approved by EPA; and (g) describe all activities undertaken in support of the

Community Involvement Plan during the previous reporting period and those to be undertaken in the next two reporting periods.  Settling Defendant shall submit these progress reports to EPA and DTSC by the tenth day of every reporting period following the lodging of this Consent Decree until EPA notifies Settling Defendant pursuant to Paragraph 48.b of Section XIV (Certification of Completion).  If requested by EPA or DTSC, Settling Defendant shall also provide briefings for EPA and DTSC to discuss the progress of the Work.

29.    Settling Defendant shall notify EPA and DTSC of any change in the schedule described in the progress report for the performance of any activity, including, but not limited to, data collection and implementation of work plans, no later than seven days prior to the performance of the activity.

30.    Upon the occurrence of any event during performance of the Work that Settling Defendant is required to report pursuant to Section 103 of CERCLA, 42 U.S.C. § 9603, or Section 304 of the Emergency Planning and Community Right-to-Know Act ("EPCRA"), 42 U.S.C. § 11004, Settling Defendant shall, within 24 hours of the onset of such event, orally notify the EPA Project Coordinator or the Alternate EPA Project Coordinator (in the event of the unavailability of the EPA Project Coordinator), or, in the event that neither the EPA Project Coordinator nor Alternate EPA Project Coordinator is available, the Emergency Response Section, Region IX, United States Environmental Protection

Agency. These reporting requirements are in addition to the reporting required by CERCLA Section 103 or EPCRA Section 304. Immediately following notice to EPA as required by this Paragraph, the Settling Defendant shall then orally notify the DTSC Project Manager.

31.     Within 30 days after the onset of such an event, Settling Defendant shall furnish to EPA and DTSC a written report, signed by Settling Defendant's Project Coordinator, setting forth the events that occurred and the measures taken, and to be taken, in response thereto. Within 45 days after the conclusion of such an event, Settling Defendant shall submit a report setting forth all actions taken in response thereto.

32.     Settling Defendant shall submit one electronic copy and one hard copy of all plans, reports, data, and other deliverables required by the SOW, the Remedial Design Work Plan, the Remedial Action Work Plan, or any other approved plans to EPA in accordance with the schedules set forth in such plans, unless EPA agrees otherwise. Settling Defendant shall simultaneously submit one electronic copy and one hard copy of all such plans, reports, data, and other deliverables to DTSC, unless DTSC agrees otherwise.

33.     All deliverables submitted by Settling Defendant to EPA and DTSC that purport to document Settling Defendant's compliance with the terms of this

Consent Decree shall be signed by an authorized representative of Settling Defendant.

### XI.   EPA APPROVAL OF PLANS, REPORTS, AND OTHER DELIVERABLES

34.   <u>Initial Submissions</u>.

a.   After review of any plan, report, or other deliverable that is required to be submitted for approval pursuant to this Consent Decree, EPA, after reasonable opportunity for review and comment by DTSC, shall: (1) approve, in whole or in part, the submission; (2) approve the submission upon specified conditions; (3) disapprove, in whole or in part, the submission; or (4) any combination of the foregoing.

b.   EPA also may modify the initial submission to cure deficiencies in the submission if: (1) EPA determines that disapproving the submission and awaiting a resubmission would cause substantial disruption to the Work; or (2) previous submission(s) have been disapproved due to material defects and the deficiencies in the initial submission under consideration indicate a bad faith lack of effort to submit an acceptable plan, report, or deliverable.

35.   <u>Resubmissions</u>.  Upon receipt of a notice of disapproval under Paragraph 34.a(3) or (4), or if required by a notice of approval upon specified conditions under Paragraph 34.a(2), Settling Defendant shall, within 15 days or

such longer time as specified by EPA, after reasonable opportunity for review and comment by DTSC, in such notice, correct the deficiencies and resubmit the plan, report, or other deliverable for approval.  After review of the resubmitted plan, report, or other deliverable, EPA may: (a) approve, in whole or in part, the resubmission; (b) approve the resubmission upon specified conditions; (c) modify the resubmission; (d) disapprove, in whole or in part, the resubmission, requiring Settling Defendant to correct the deficiencies; or (e) any combination of the foregoing.

36.  Material Defects.  If an initially submitted or resubmitted plan, report, or other deliverable contains a material defect, and the plan, report, or other deliverable is disapproved or modified by EPA under Paragraph 34.b(2) or 35 due to such material defect, then the material defect shall constitute a lack of compliance for purposes of Paragraph 71.  The provisions of Section XIX (Dispute Resolution) and Section XX (Stipulated Penalties) shall govern the accrual and payment of any stipulated penalties regarding Settling Defendant's submissions under this Section.

37.  Implementation.  Upon approval, approval upon conditions, or modification by EPA under Paragraph 34 (Initial Submissions) or Paragraph 35 (Resubmissions), of any plan, report, or other deliverable, or any portion thereof: (a) such plan, report, or other deliverable, or portion thereof, shall be incorporated

into and enforceable under this Consent Decree; and (b) Settling Defendant shall

take any action required by such plan, report, or other deliverable, or portion

thereof, subject only to its right to invoke the Dispute Resolution procedures set

forth in Section XIX (Dispute Resolution) with respect to the modifications or

conditions made by EPA.  The implementation of any non-deficient portion of a

plan, report, or other deliverable submitted or resubmitted under Paragraph 34 or

35 shall not relieve Settling Defendant of any liability for stipulated penalties

under Section XX (Stipulated Penalties).

## XII.   PROJECT COORDINATORS

38.     Within 20 days after lodging this Consent Decree, Settling Defendant,

DTSC and EPA will notify each other, in writing, of the name, address, telephone

number, and email address of their respective designated Project Coordinators and

Alternate Project Coordinators.  If a Project Coordinator or Alternate Project

Coordinator initially designated is changed, the identity of the successor will be

given to the other Parties at least five working days before the change occurs,

unless impracticable, but in no event later than the actual day the change is made.

Settling Defendant's Project Coordinator shall be subject to disapproval by EPA,

after reasonable opportunity for review and comment by DTSC, and shall have the

technical expertise sufficient to adequately oversee all aspects of the Work.

Settling Defendant's Project Coordinator shall not be an attorney for any Settling

Defendant in this matter.  He or she may assign other representatives, including

other contractors, to serve as a Site representative for oversight of performance of

daily operations during remedial activities.

39.    Plaintiffs may designate other representatives, including, but not

limited to, EPA and DTSC employees, and federal and State contractors and

consultants, to observe and monitor the progress of any activity undertaken

pursuant to this Consent Decree.  EPA's Project Coordinator and Alternate Project

Coordinator shall have the authority lawfully vested in a Remedial Project

Manager ("RPM") and an On-Scene Coordinator ("OSC") by the NCP, 40 C.F.R.

Part 300.  EPA's Project Coordinator or Alternate Project Coordinator shall have

authority, consistent with the NCP, to halt any Work required by this Consent

Decree and to take any necessary response action when he or she determines that

conditions at the Site constitute an emergency situation or may present an

immediate threat to public health or welfare or the environment due to release or

threatened release of Waste Material.

40.    EPA's Project Coordinator, DTSC's Project Coordinator, and Settling

Defendant's Project Coordinator will meet (in person, by teleconference, or

electronically), at a minimum, on a quarterly basis.

48

## XIII.  PERFORMANCE GUARANTEE

41.    In order to ensure the full and final completion of the Work, Settling Defendant shall establish and maintain a performance guarantee, initially in the amount of $53,893,000, for the benefit of EPA (hereinafter "Estimated Cost of the Work").  The performance guarantee, which must be satisfactory in form and substance to EPA, shall be in the form of one or more of the following mechanisms (provided that, if Settling Defendant intends to use multiple mechanisms, such multiple mechanisms shall be limited to surety bonds guaranteeing payment, letters of credit, trust funds, and insurance policies):

a.    A surety bond unconditionally guaranteeing payment and/or performance of the Work that is issued by a surety company among those listed as acceptable sureties on federal bonds as set forth in Circular 570 of the U.S. Department of the Treasury;

b.    One or more irrevocable letters of credit, payable to or at the direction of EPA, that is issued by one or more financial institution(s) (1) that has the authority to issue letters of credit and (2) whose letter-of-credit operations are regulated and examined by a federal or state agency;

c.      A trust fund established for the benefit of EPA that is administered by a trustee (1) that has the authority to act as a trustee and (2) whose trust operations are regulated and examined by a federal or state agency;

d.      A policy of insurance that (1) provides EPA with acceptable rights as a beneficiary thereof; and (2) is issued by an insurance carrier (i) that has the authority to issue insurance policies in the applicable jurisdiction(s) and (ii) whose insurance operations are regulated and examined by a federal or state agency;

e.      A demonstration by Settling Defendant that Settling Defendant meets the financial test criteria of 40 C.F.R. § 264.143(f) with respect to the Estimated Cost of the Work (plus the amount(s) of any other federal or any state environmental obligations financially assured through the use of a financial test or guarantee), provided that all other requirements of 40 C.F.R. § 264.143(f) are met to EPA's satisfaction; or

f.      A written guarantee to fund or perform the Work executed in favor of EPA by one or more of the following: (1) a direct or indirect parent company of Settling Defendant, or (2) a company that has a "substantial business relationship" (as defined in 40 C.F.R. § 264.141(h)) with Settling Defendant; provided, however, that any company providing such a guarantee must

demonstrate to the satisfaction of EPA that it satisfies the financial test and

reporting requirements for owners and operators set forth in subparagraphs (1)

through (8) of 40 C.F.R. § 264.143(f) with respect to the Estimated Cost of the

Work (plus the amount(s) of any other federal or any state environmental

obligations financially assured through the use of a financial test or guarantee) that

it proposes to guarantee hereunder.

42.     Settling Defendant has selected, and EPA has found satisfactory, as an

initial performance guarantee pursuant to Paragraph 41.b, in the form attached

hereto as Appendix E.  Within 10 days after the Effective Date, Settling Defendant

shall execute or otherwise finalize all instruments or other documents required in

order to make the selected performance guarantee(s) legally binding in a form

substantially identical to the documents attached hereto as Appendix E, and such

performance guarantee(s) shall thereupon be fully effective.  Within 30 days after

the Effective Date, Settling Defendant shall submit copies of all executed and/or

otherwise finalized instruments or other documents required in order to make the

selected performance guarantee(s) legally binding to the EPA Regional Financial

Management Officer in accordance with Section XXVI (Notices and Submissions),

with a copy to Kathi Moore, Superfund Division, EPA Region IX, 75 Hawthorne

St., San Francisco, CA  94105 and to the United States and EPA and DTSC as

specified in Section XXVI.

43.    If, at any time after the Effective Date and before issuance of the

Certification of Completion of the Work pursuant to Paragraph 48, Settling

Defendant provides a performance guarantee for completion of the Work by means

of a demonstration or guarantee pursuant to Paragraph 41.e or 41.f, Settling

Defendant shall also comply with the other relevant requirements of 40 C.F.R.

§ 264.143(f) relating to these mechanisms unless otherwise provided in this

Consent Decree, including but not limited to: (a) the initial submission of required

financial reports and statements from the relevant entity's chief financial officer

("CFO") and independent certified public accountant ("CPA"), in the form

prescribed by EPA in its financial test sample CFO letters and CPA reports

available at: http://www2.epa.gov/sites/production/files/documents/fa-test-

samples-o.pdf; (b) the annual resubmission of such reports and statements within

90 days after the close of each such entity's fiscal year; and (c) the prompt

notification of EPA after each such entity determines that it no longer satisfies the

financial test requirements set forth at 40 C.F.R. § 264.143(f)(1) and in any event

within 90 days after the close of any fiscal year in which such entity no longer

satisfies such financial test requirements.  For purposes of the performance

guarantee mechanisms specified in this Section XIII, references in 40 C.F.R.

Part 264, Subpart H, to "closure," "post-closure," and "plugging and

abandonment" shall be deemed to include the Work; the terms "current closure

cost estimate," "current post-closure cost estimate," and "current plugging and abandonment cost estimate" shall be deemed to include the Estimated Cost of the Work; the terms "owner" and "operator" shall be deemed to refer to Settling Defendant making a demonstration under Paragraph 41.e; and the terms "facility" and "hazardous waste facility" shall be deemed to include the Site.

44.     In the event that EPA determines at any time that a performance guarantee provided by Settling Defendant pursuant to this Section is inadequate or otherwise no longer satisfies the requirements set forth in this Section, whether due to an increase in the estimated cost of completing the Work or for any other reason, or in the event that Settling Defendant becomes aware of information indicating that a performance guarantee provided pursuant to this Section is inadequate or otherwise no longer satisfies the requirements set forth in this Section, whether due to an increase in the estimated cost of completing the Work or for any other reason, Settling Defendant, within 30 days after receipt of notice of EPA's determination or, as the case may be, within 30 days after Settling Defendant becoming aware of such information, shall obtain and present to EPA for approval a proposal for a revised or alternative form of performance guarantee listed in Paragraph 41 that satisfies all requirements set forth in this Section XIII; provided, however, that if Settling Defendant cannot obtain such revised or alternative form of performance guarantee within such 30-day period, and provided further that the Settling

Defendant shall have commenced to obtain such revised or alternative form of performance guarantee within such 30-day period, and thereafter diligently proceeds to obtain the same, EPA shall extend such period for such time as is reasonably necessary for the Settling Defendant in the exercise of due diligence to obtain such revised or alternative form of performance guarantee, such additional period not to exceed 30 days.  In seeking approval for a revised or alternative form of performance guarantee, Settling Defendant shall follow the procedures set forth in Paragraph 46.b(2).  Settling Defendant's inability to post a performance guarantee for completion of the Work shall in no way excuse performance of any other requirements of this Consent Decree, including, without limitation, the obligation of Settling Defendant to complete the Work in strict accordance with the terms of this Consent Decree.

45.   <u>Funding for Work Takeover</u>.  The commencement of any Work Takeover pursuant to Paragraph 88 shall trigger EPA's right to receive the benefit of any performance guarantee(s) provided pursuant to Paragraphs 41.a, 41.b, 41.c, 41.d, or 41.f, and at such time EPA shall have immediate access to resources guaranteed under any such performance guarantee(s), whether in cash or in kind, as needed to continue and complete the Work assumed by EPA under the Work Takeover.  Upon the commencement of any Work Takeover, if (a) for any reason EPA is unable to promptly secure the resources guaranteed under any such

performance guarantee(s), whether in cash or in kind, necessary to continue and complete the Work assumed by EPA under the Work Takeover, or (b) in the event that the performance guarantee involves a demonstration of satisfaction of the financial test criteria pursuant to Paragraph 41.e or Paragraph 41.f(2), Settling Defendant (or in the case of Paragraph 41.f(2), the guarantor) shall immediately upon written demand from EPA deposit into a special account within the EPA Hazardous Substance Superfund or such other account as EPA may specify, in immediately available funds and without setoff, counterclaim, or condition of any kind, a cash amount up to but not exceeding the estimated cost of completing the Work as of such date, as determined by EPA.  In addition, if at any time EPA is notified by the issuer of a performance guarantee that such issuer intends to cancel the performance guarantee mechanism it has issued, then, unless Settling Defendant provides a substitute performance guarantee mechanism in accordance with this Section XIII no later than 30 days prior to the impending cancellation date, EPA shall be entitled (as of and after the date that is 30 days prior to the impending cancellation) to draw fully on the funds guaranteed under the then-existing performance guarantee for use consistent with this Section.  All EPA Work Takeover costs not reimbursed under this Paragraph shall be reimbursed under Section XVI (Payments for Response Costs).

46.    Modification of Amount and/or Form of Performance Guarantee.

a.    Reduction of Amount of Performance Guarantee.  If Settling Defendant believes that the estimated cost of completing the Work has diminished below the amount set forth in Paragraph 41, Settling Defendant may, on any anniversary of the Effective Date, or at any other time agreed to by the Parties, petition EPA in writing to request a reduction in the amount of the performance guarantee provided pursuant to this Section so that the amount of the performance guarantee is equal to the estimated cost of completing the Work.  Settling Defendant shall submit a written proposal for such reduction to EPA that shall specify, at a minimum, the estimated cost of completing the Work and the basis upon which such cost was calculated.  In seeking approval for a reduction in the amount of the performance guarantee, Settling Defendant shall follow the procedures set forth in Paragraph 46.b(2) for requesting a revised or alternative form of performance guarantee, except as specifically provided in this Paragraph 46.a.  If EPA decides to accept Settling Defendant's proposal for a reduction in the amount of the performance guarantee, either to the amount set forth in Settling Defendant's written proposal or to some other amount as selected by EPA, EPA will notify the petitioning Settling Defendant of such decision in writing.  Upon EPA's acceptance of a reduction in the amount of the performance guarantee, the Estimated Cost of the Work shall be deemed to be the estimated cost

of completing the Work set forth in EPA's written decision.  After receiving EPA's

written decision, Settling Defendant may reduce the amount of the performance

guarantee in accordance with and to the extent permitted by such written

acceptance and shall submit copies of all executed and/or otherwise finalized

instruments or other documents required in order to make the selected performance

guarantee(s) legally binding in accordance with Paragraph 46.b(2).  In the event of

a dispute, Settling Defendant may reduce the amount of the performance guarantee

required hereunder only in accordance with a final administrative or judicial

decision resolving such dispute pursuant to Section XIX (Dispute Resolution).  No

change to the form or terms of any performance guarantee provided under this

Section, other than a reduction in amount, is authorized except as provided in

Paragraphs 44 or 46.a.

       b.      <u>Change of Form of Performance Guarantee</u>.

           (1)     If, after the Effective Date, Settling Defendant desires to

change the form or terms of any performance guarantee(s) provided pursuant

to this Section, Settling Defendant may, on any anniversary of the Effective

Date, or at any other time agreed to by the Parties, petition EPA in writing to

request a change in the form or terms of the performance guarantee provided

hereunder.  The submission of such proposed revised or alternative

performance guarantee shall be as provided in Paragraph 46.a(2).  Any

decision made by EPA on a petition submitted under this Paragraph shall be made in EPA's sole and unreviewable discretion, and such decision shall not be subject to challenge by Settling Defendant pursuant to the dispute resolution provisions of this Consent Decree or in any other forum.

        (2)     Settling Defendant shall submit a written proposal for a revised or alternative performance guarantee to EPA that shall specify, at a minimum, the estimated cost of completing the Work, the basis upon which such cost was calculated, and the proposed revised performance guarantee, including all proposed instruments or other documents required in order to make the proposed performance guarantee legally binding.  The proposed revised or alternative performance guarantee must satisfy all requirements set forth or incorporated by reference in this Section.  Settling Defendant shall submit such proposed revised or alternative performance guarantee to the EPA Regional Financial Management Officer in accordance with Section XXVI (Notices and Submissions), with a copy to Kathi Moore, Superfund Division, EPA Region IX, 75 Hawthorne St., San Francisco, CA 94105.  EPA will notify Settling Defendant in writing of its decision to accept or reject a revised or alternative performance guarantee submitted pursuant to this Paragraph.  Within ten days after receiving a written decision approving the proposed revised or alternative performance

guarantee, Settling Defendant shall execute and/or otherwise finalize all instruments or other documents required in order to make the selected performance guarantee(s) legally binding in a form substantially identical to the documents submitted to EPA as part of the proposal, and such performance guarantee(s) shall thereupon be fully effective.  Settling Defendant shall submit copies of all executed and/or otherwise finalized instruments or other documents required in order to make the selected performance guarantee(s) legally binding to the EPA Regional Financial Management Officer within 30 days after receiving a written decision approving the proposed revised or alternative performance guarantee in accordance with Section XXVI (Notices and Submissions), with a copy to Yenhung Ho, Financial Analyst, EPA Region IX, 75 Hawthorne St., San Francisco, CA  94105 and to the United States and EPA and DTSC as specified in Section XXVI.

c.      Release of Performance Guarantee. Settling Defendant shall not release, cancel, or discontinue any performance guarantee provided pursuant to this Section except as provided in this Paragraph.  If Settling Defendant receives written notice from EPA in accordance with Paragraph 48 that the Work has been fully and finally completed in accordance with the terms of this Consent Decree, or if EPA otherwise so

59

notifies Settling Defendant in writing, Settling Defendant may thereafter release, cancel, or discontinue the performance guarantee(s) provided pursuant to this Section.  In the event of a dispute, Settling Defendant may release, cancel, or discontinue the performance guarantee(s) required hereunder only in accordance with a final administrative or judicial decision resolving such dispute pursuant to Section XIX (Dispute Resolution).

## XIV.  CERTIFICATION OF COMPLETION

47.    Completion of the Remedial Action.

a.      Within 30 days after Settling Defendant concludes that construction is complete for a treatment area-specific component of the Remedial Action, Settling Defendant shall schedule and conduct a pre-certification inspection to be attended by Settling Defendant, EPA, and DTSC.  Reporting and follow-ups to the inspection shall be conducted as specified in the SOW.  For the purposes of this Section, a "treatment area-specific component of the Remedial Action" shall be defined as the application of a remedial technology within a contiguous area.

b.      Within 120 days after a treatment area-specific component of the Remedial Action has been fully performed and the applicable Performance Standards have been achieved, Settling Defendant shall submit a written Treatment

Area-Specific Remedial Action Report.  In the report, a registered professional engineer and Settling Defendant's Project Coordinator shall state that the treatment area-specific component of the Remedial Action has been completed in full satisfaction of the requirements of this Consent Decree and Statement of Work. The written report shall include as-built drawings signed and stamped by a professional engineer for any Remedial Action-related structures that remain in place.  The report shall contain the following statement, signed by a responsible corporate official of Settling Defendant or Settling Defendant's Project Coordinator:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

If, after review of any Treatment Area-Specific Remedial Action Report, EPA, after reasonable opportunity for review and comment by DTSC, determines that

the treatment area-specific component of the Remedial Action or any portion thereof has not been completed in accordance with this Consent Decree or that the Performance Standards have not been achieved, EPA will notify Settling Defendant in writing of the activities that must be undertaken by Settling Defendant pursuant to this Consent Decree to complete the treatment area-specific component of the Remedial Action and achieve the relevant Performance Standards, provided, however, that EPA may only require Settling Defendant to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the "scope of the remedy set forth in the ROD," as that term is defined in Paragraph 13.a.  EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent Decree and the SOW or require Settling Defendant to submit a schedule to EPA for approval pursuant to Section XI (EPA Approval of Plans, Reports, and Other Deliverables).  Settling Defendant shall perform all activities described in the notice in accordance with the specifications and schedules established pursuant to this Paragraph, subject to its right to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution).

c.     If EPA concludes, based on the initial or any subsequent report requesting Certification of Completion of any treatment area-specific component of the Remedial Action and after a reasonable opportunity for review and comment

62

by DTSC, that said Remedial Action has been performed in accordance with this Consent Decree and that the Performance Standards have been achieved as to that treatment area, EPA will so certify in writing to Settling Defendant. This certification shall constitute the treatment area- specific Certification of Completion for that component of the Remedial Action for purposes of this Consent Decree. Certification of Completion of a treatment area-specific component of the Remedial Action shall not affect Settling Defendant's remaining obligations under this Consent Decree.

48.   Completion of the Work.

a.   Within 90 days after Settling Defendant concludes that all phases of the Work, other than any remaining activities required under Section VII (Remedy Review), have been fully performed, Settling Defendant shall submit a written report stating that the Work has been completed in full satisfaction of the requirements of this Consent Decree. The report shall contain the statement set forth in Paragraph 47.b, signed by a responsible corporate official of Settling Defendant or Settling Defendant's Project Coordinator. If, after review of the written report, EPA, after reasonable opportunity for review and comment by DTSC, determines that any portion of the Work has not been completed in accordance with this Consent Decree, EPA will notify Settling Defendant in writing of the activities that must be undertaken by Settling Defendant pursuant to

this Consent Decree to complete the Work, provided, however, that EPA may only require Settling Defendant to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the "scope of the remedy set forth in the ROD," as that term is defined in Paragraph 13.a.  EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent Decree and the SOW or require Settling Defendant to submit a schedule to EPA for approval pursuant to Section XI (EPA Approval of Plans, Reports, and Other Deliverables).  Settling Defendant shall perform all activities described in the notice in accordance with the specifications and schedules established therein, subject to its right to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution).

      b.     If EPA concludes, based on the initial or any subsequent request for Certification of Completion of the Work by Settling Defendant and after a reasonable opportunity for review and comment by DTSC, that the Work has been performed in accordance with this Consent Decree, EPA will so notify Settling Defendant in writing.

## XV.   EMERGENCY RESPONSE

     49.    If any action or occurrence during the performance of the Work that causes or threatens a release of Waste Material from the Site that constitutes an

emergency situation or may present an immediate threat to public health or welfare or the environment, Settling Defendant shall, subject to Paragraph 50, immediately take all appropriate action to prevent, abate, or minimize such release or threat of release, and shall immediately notify the EPA's Project Coordinator, or, if the Project Coordinator is unavailable, EPA's Alternate Project Coordinator.  If neither of these persons is available, Settling Defendant shall notify the EPA Emergency Response Unit, Region IX.  Settling Defendant shall take such actions in consultation with EPA's Project Coordinator or other available authorized EPA officer and in accordance with all applicable provisions of the Health and Safety Plans, the Contingency Plans, and any other applicable plans or documents developed pursuant to the SOW.  In the event that Settling Defendant fails to take appropriate response action as required by this Section, and EPA or, as appropriate, DTSC takes such action instead, Settling Defendant shall reimburse EPA and DTSC for all costs of the response action under Section XVI (Payments for Response Costs).

50.    Subject to Section XXI (Covenants by Plaintiffs), nothing in the preceding Paragraph or in this Consent Decree shall be deemed to limit any authority of the United States, or the State, (a) to take all appropriate action to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site,

or (b) to direct or order such action, or seek an order from the Court, to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site.

## XVI.  PAYMENTS FOR RESPONSE COSTS

51.    <u>Payment by Settling Defendant for Past Response Costs and DTSC Past Response Costs</u>.

a.    Within 60 days after the Effective Date, Settling Defendant shall pay to EPA $ 1,200,000 in payment for Past Response Costs.  Payment shall be made in accordance with Paragraph 55.a (Instructions for Past Response Cost Payments).

b.    The total amount to be paid by Setting Defendant pursuant to Paragraph 55.a shall be deposited by EPA in the Del Amo Superfund Site Special Account to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

c.    Within 60 days after the Effective Date, Settling Defendant shall pay to DTSC $ 63,993.81 by official bank check(s) made payable to California Department of Toxic Substances Control, in payment of DTSC Past Response Costs.  Settling Defendant shall send the bank check(s) to Accounting,

California Department of Toxic Substances Control, 1001 "I" Street, 21st Floor,

P.O. Box 806, Sacramento, CA 95812-0806.

52.   <u>Payments by Settling Defendant for Future Response Costs and DTSC Future Response Costs</u>.  Settling Defendant shall pay to EPA all Future Response Costs not inconsistent with the NCP.

a.   On a periodic basis, EPA will send Settling Defendant a bill requiring payment that includes a standard Regionally-prepared cost summary, which includes direct and indirect costs incurred by EPA and its contractors and a DOJ case cost summary.  Settling Defendant shall make all payments within 60 days after Settling Defendant's receipt of each bill requiring payment, except as otherwise provided in Paragraph 56, in accordance with Paragraph 55.b (Instructions for Future Response Cost Payments).

b.   The total amount to be paid by Setting Defendant pursuant to Paragraph 52.a shall be deposited by EPA in the Del Amo Superfund Site Special Account to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

c.   Settling Defendant shall pay to DTSC all DTSC Future Response Costs not inconsistent with the NCP.  DTSC will send Settling

67

Defendant a bill requiring payment that includes a Summary by Activity report on a quarterly basis.  Settling Defendant shall have the right to review and request clarification of costs from DTSC to ensure that costs are appropriate, not inconsistent with the NCP, applied correctly to this Site and Operable Unit, and have not been included in past reimbursement requests.  DTSC agrees to cooperate with reasonable requests and may for good cause extend the payment date to allow for completion of this activity.  Settling Defendant shall not unreasonably delay reimbursement.  Unless the payment date has been extended by DTSC pursuant to the foregoing, Settling Defendant shall make all payments within 60 days after Settling Defendant's receipt of each bill requiring payment, except as otherwise provided in Paragraph 56.  Interest on these costs will accrue pursuant to California law.  Settling Defendant shall make all payments to DTSC required by this Paragraph in accordance with Paragraph 51.c.

53.  Payments by Settling Federal Agency.  The United States, on behalf of the Settling Federal Agency, shall reimburse Settling Defendant for a portion of EPA Past and Future Response Costs, DTSC Past and Future Response Costs, and Settling Defendant's Future Response Costs, pursuant to the 2014 Settlement Agreement.  Any disputes regarding payments by Settling Federal Agency shall be addressed pursuant to the dispute resolution procedures set forth in that separate agreement.

54.     The Parties to this Consent Decree recognize and acknowledge that the payment obligations of the Settling Federal Agency under this Consent Decree can only be paid from appropriated funds legally available for such purpose. Nothing in this Consent Decree shall be interpreted or construed as a commitment or requirement that Settling Federal Agency obligate or pay funds in contravention of the Anti-Deficiency Act, 31 U.S.C. § 1341, or any other applicable provision of law.

55.     Payment Instructions for Settling Defendant.

a.     Instructions for Past Response Costs Payments.  All payments required elsewhere in this Consent Decree to be made in accordance with this Paragraph 55.a shall be made at https://www.pay.gov to the U.S. Department of Justice account, in accordance with instructions provided to Settling Defendant by the Financial Litigation Unit ("FLU") of the United States Attorney's Office for the Central District of California after the Effective Date.  The payment instructions provided by the FLU shall include a Consolidated Debt Collection System ("CDCS") number, which shall be used to identify all payments required to be made in accordance with this Consent Decree.  The FLU shall provide the payment instructions to:

Carol Campagna
Remedial Project Manager

Shell Oil Products US
20945 S. Wilmington Ave.
Carson, CA  90749
Phone: 707-864-1617
Fax: 713-423-0349
Email: Carol.Campagna@Shell.com

on behalf of Settling Defendant.  Settling Defendant may change the individual to

receive payment instructions on its behalf by providing written notice of such

change in accordance with Section XXVI (Notices and Submissions).  When

making payments under this Paragraph 55.a, Settling Defendant shall also comply

with Paragraph 55.c.

b.      Instructions for Future Response Costs Payments and Stipulated

Penalties.  All payments required elsewhere in this Consent Decree to be made in

accordance with this Paragraph 55.b shall be made by Fedwire EFT to:

Federal Reserve Bank of New York
ABA  =  021030004
Account = 68010727
SWIFT address = FRNYUS33
33 Liberty Street
New York NY 10045
Field Tag 4200 of the Fedwire message should read "D 68010727
Environmental Protection Agency"

When making payments under this Paragraph 55.b, Settling Defendant shall also

comply with Paragraph 55.c.

c.      Instructions for All Payments.  All payments made under

Paragraphs 55.a (Instructions for Past Response Cost Payments) or 55.b

70

(Instructions for Future Response Cost Payments) shall reference the CDCS Number, Site/Spill ID Number 09 36, and DOJ Case Number 90-11-2-933/4.  At the time of any payment required to be made in accordance with Paragraphs 55.a or 55.b, Settling Defendant shall send notice that payment has been made to the United States, and to EPA, in accordance with Section XXVI (Notices and Submissions), and to the EPA Cincinnati Finance Office by email at acctsreceivable.cinwd@epa.gov, or by mail at 26 Martin Luther King Drive, Cincinnati, Ohio 45268.  Such notice shall also reference the CDCS Number, Site/Spill ID Number, and DOJ Case Number.

56.    Settling Defendant may contest any Future Response Costs or DTSC Future Response Costs billed under Paragraph 52 (Payments by Settling Defendant for Future Response Costs and DTSC Future Response Costs) if it determines that EPA or DTSC has made a mathematical error or included a cost item that is not within the definition of Future Response Costs or DTSC Future Response Costs, or if it believes EPA or DTSC incurred excess costs as a direct result of an action that was inconsistent with a specific provision or provisions of the NCP.  Such objection shall be made in writing within 60 days after receipt of the bill and must be sent to the United States pursuant to Section XXVI (Notices and Submissions).  Any such objection shall specifically identify the contested costs and the basis for objection.  As to DTSC Future Response Costs, Settling Defendant must comply

with dispute resolution procedures in Paragraph 69.b (contesting payment of any

DTSC Future Response Costs).  In the event of an objection, Settling Defendant

shall pay all uncontested costs to the United States or DTSC, as applicable, within

60 days after Settling Defendant's receipt of the bill requiring payment.

Simultaneously Settling Defendant shall establish, in a duly chartered bank or trust

company, an interest-bearing escrow account that is insured by the Federal Deposit

Insurance Corporation ("FDIC"), and by the due date for reimbursement of those

costs remit to that escrow account funds equivalent to the amount of the contested

costs.  Deposit of the contested amount to the escrow account by the due date for

reimbursement of costs shall constitute timely payment of the disputed costs.

Settling Defendant shall send to the United States, and DTSC as appropriate, as

provided in Section XXVI (Notices and Submissions), a copy of the transmittal

letter and check paying the uncontested costs, and a copy of the correspondence

that establishes and funds the escrow account, including, but not limited to,

information containing the identity of the bank and bank account under which the

escrow account is established as well as a bank statement showing the initial

balance of the escrow account.  Simultaneously with establishment of the escrow

account, Settling Defendant shall initiate the Dispute Resolution procedures in

Section XIX (Dispute Resolution).  If the United States prevails in the dispute,

Settling Defendant shall pay the sums due (with any interest that has accrued in the

escrow account, or if the interest earned is less than the Surplus Money Investment Fund Rate, Settling Defendant will be required to pay additional interest as necessary to make DTSC whole consistent with California Health and Safety Code Section 25360.1) to the United States and DTSC within five days after the resolution of the dispute.  If Settling Defendant prevails concerning any aspect of the contested costs, Settling Defendant shall pay that portion of the costs (plus any interest on that portion that has accrued in the escrow account) for which it did not prevail to the United States/DTSC within five days after the resolution of the dispute.  Settling Defendant shall be disbursed any balance of the escrow account. All payments to the United States under this Paragraph shall be made in accordance with Paragraph 55.b (Instructions for Future Response Cost Payments). The dispute resolution procedures set forth in this Paragraph in conjunction with the procedures set forth in Section XIX (Dispute Resolution) shall be the exclusive mechanisms for resolving disputes regarding Settling Defendant's obligation to reimburse the United States for the Future Response Costs.

57.    Interest.  In the event that any payment for Past Response Costs or DTSC Past Response Costs or for Future Response Costs or DTSC Future Response Costs required under this Section is not made by the date required, Settling Defendant shall pay Interest on the unpaid balance.  The Interest to be paid on Past Response Costs and DTSC Past Response Costs under this Paragraph shall

73

begin to accrue on the Effective Date.  The Interest on Future Response Costs and

DTSC Future Response Costs shall begin to accrue on the date of the bill.  The

Interest shall accrue through the date of Settling Defendant's payment.  Payments

of Interest made under this Paragraph shall be in addition to such other remedies or

sanctions available to Plaintiffs by virtue of Settling Defendant's failure to make

timely payments under this Section including, but not limited to, payment of

stipulated penalties pursuant to Paragraph 72.

## XVII. INDEMNIFICATION AND INSURANCE

58.     <u>Settling Defendant's Indemnification of the United States and the</u>

<u>State</u>.

a.      The United States and the State do not assume any liability by

entering into this Consent Decree or by virtue of any designation of Settling

Defendant as EPA's authorized representative under Section 104(e) of CERCLA,

42 U.S.C. § 9604(e).  Settling Defendant shall indemnify, save and hold harmless

the United States, the State, and their officials, agents, employees, contractors,

subcontractors, and representatives for or from any and all claims or causes of

action arising from, or on account of, negligent or other wrongful acts or omissions

of Settling Defendant, its officers, directors, employees, agents, contractors,

subcontractors, and any persons acting on its behalf or under its control, in carrying

out activities pursuant to this Consent Decree, including, but not limited to, any claims arising from any designation of Settling Defendant as EPA's authorized representative under Section 104(e) of CERCLA.  Further, Settling Defendant agrees to pay the United States and the State all costs they incur including, but not limited to, attorneys' fees and other expenses of litigation and settlement arising from, or on account of, claims made against the United States or the State based on negligent or other wrongful acts or omissions of Settling Defendant, its officers, directors, employees, agents, contractors, subcontractors, and any persons acting on its behalf or under its control, in carrying out activities pursuant to this Consent Decree.  Neither the United States nor the State shall be held out as a party to any contract entered into by or on behalf of Settling Defendant in carrying out activities pursuant to this Consent Decree.  Neither Settling Defendant nor any such contractor shall be considered an agent of the United States or the State.

        b.      The United States and the State shall give Settling Defendant notice of any claim for which the United States or the State plans to seek indemnification pursuant to this Paragraph 58, and shall consult with Settling Defendant prior to settling such claim.

      59.     Unless otherwise provided in this Consent Decree, Settling Defendant covenants not to sue and agrees not to assert any claims or causes of action against the United States and the State for damages or reimbursement or for set-off of any

75

payments made or to be made to the United States or the State, arising from or on account of any contract, agreement, or arrangement between Settling Defendant and any person for performance of Work on or relating to Operable Unit 1, including, but not limited to, claims on account of construction delays.  In addition, Settling Defendant shall indemnify and hold harmless the United States and the State with respect to any and all claims for damages or reimbursement arising from or on account of any contract, agreement, or arrangement between Settling Defendant and any person for performance of Work on or relating to Operable Unit 1, including, but not limited to, claims on account of construction delays.

60.    No later than 15 days before commencing any on-site Work, Settling Defendant shall secure, and shall maintain until the first anniversary after issuance of EPA's Certification of Completion for the last Treatment Area-Specific Remedial Action pursuant to Paragraph 47.c of Section XIV (Certification of Completion), commercial general liability insurance with limits of two million dollars, for any one occurrence, and automobile liability insurance with limits of one million dollars, combined single limit, naming the United States and DTSC as additional insureds with respect to all liability arising out of the activities performed by or on behalf of Settling Defendant pursuant to this Consent Decree. In addition, for the duration of this Consent Decree, Settling Defendant shall satisfy, or shall ensure that its contractors or subcontractors satisfy, all applicable

76

laws and regulations regarding the provision of worker's compensation insurance for all persons performing the Work on behalf of Settling Defendant in furtherance of this Consent Decree. Prior to commencement of the Work under this Consent Decree, Settling Defendant shall provide to EPA and DTSC certificates of such insurance and a copy of each insurance policy. Settling Defendant shall resubmit such certificates and copies of policies each year on the anniversary of the Effective Date. If Settling Defendant demonstrates by evidence satisfactory to EPA and DTSC that any contractor or subcontractor maintains insurance equivalent to that described above, or insurance covering the same risks but in a lesser amount, then, with respect to that contractor or subcontractor, Settling Defendant need provide only that portion of the insurance described above that is not maintained by the contractor or subcontractor.

## XVIII.  FORCE MAJEURE

61.    "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Settling Defendant, of any entity controlled by Settling Defendant, or of Settling Defendant's contractors that delays or prevents the performance of any obligation under this Consent Decree despite Settling Defendant's best efforts to fulfill the obligation. The requirement that Settling Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure and best efforts to

77

address the effects of any potential force majeure (a) as it is occurring and

(b) following the potential force majeure such that the delay and any adverse

effects of the delay are minimized to the greatest extent possible.  "Force majeure"

does not include financial inability to complete the Work or a failure to achieve the

Performance Standards.

62.    If any event occurs or has occurred that may delay the performance of

any obligation under this Consent Decree for which Settling Defendant intends or

may intend to assert a claim of force majeure, Settling Defendant shall notify

EPA's Project Coordinator orally or, in his or her absence, EPA's Alternate Project

Coordinator or, in the event both of EPA's designated representatives are

unavailable, the Director of the Superfund Division, EPA Region IX, within five

days of when Settling Defendant first knew that the event might cause a delay.

Within 14 days thereafter, Settling Defendant shall provide in writing to EPA and

DTSC an explanation and description of the reasons for the delay; the anticipated

duration of the delay; all actions taken or to be taken to prevent or minimize the

delay; a schedule for implementation of any measures to be taken to prevent or

mitigate the delay or the effect of the delay; Settling Defendant's rationale for

attributing such delay to a force majeure; and a statement as to whether, in the

opinion of Settling Defendant, such event may cause or contribute to an

endangerment to public health or welfare, or the environment.  Settling Defendant

shall include with any notice all available documentation supporting its claim that the delay was attributable to a force majeure.  Settling Defendant shall be deemed to know of any circumstance of which Settling Defendant, any entity controlled by Settling Defendant, or Settling Defendant's contractors knew or should have known.  Failure to comply with the above requirements regarding an event shall preclude Settling Defendant from asserting any claim of force majeure regarding that event, provided, however, that if EPA, despite the late notice, is able to assess to its satisfaction whether the event is a force majeure under Paragraph 61 and whether Settling Defendant has exercised its best efforts under Paragraph 61, EPA may, in its unreviewable discretion, excuse in writing Settling Defendant's failure to submit timely notices to EPA under this Paragraph.

63.    If EPA, after a reasonable opportunity for review and comment by DTSC, agrees that the delay or anticipated delay is attributable to a force majeure, the time for performance of the obligations under this Consent Decree that are affected by the force majeure will be extended by EPA, after a reasonable opportunity for review and comment by DTSC, for such time as is necessary to complete those obligations.  An extension of the time for performance of the obligations affected by the force majeure shall not, of itself, extend the time for performance of any other obligation.  If EPA, after a reasonable opportunity for review and comment by DTSC, does not agree that the delay or anticipated delay

79

has been or will be caused by a force majeure, EPA will notify Settling Defendant in writing of its decision.  If EPA, after a reasonable opportunity for review and comment by DTSC, agrees that the delay is attributable to a force majeure, EPA will notify Settling Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure.

64.     If Settling Defendant elects to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution), it shall do so no later than 15 days after receipt of EPA's notice.  In any such proceeding, Settling Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Settling Defendant complied with the requirements of Paragraphs 61 and 62.  If Settling Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Settling Defendant of the affected obligation of this Consent Decree identified to EPA and the Court.

## XIX.  DISPUTE RESOLUTION

65.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to

resolve disputes regarding this Consent Decree.  However, the procedures set forth in this Section shall not apply to actions by the United States or DTSC to enforce obligations of Settling Defendant that have not been disputed in accordance with this Section.

66.     Any dispute regarding this Consent Decree shall in the first instance be the subject of informal negotiations between the parties to the dispute.  The period for informal negotiations shall not exceed 20 days from the time the dispute arises, unless it is modified by written agreement of the parties to the dispute.  The dispute shall be considered to have arisen when one party sends the other parties a written Notice of Dispute.

67.     Statements of Position.

a.     In the event that the parties cannot resolve a dispute by informal negotiations under the preceding Paragraph, then the position advanced by EPA shall be considered binding unless, within 14 days after the conclusion of the informal negotiation period, Settling Defendant invokes the formal dispute resolution procedures of this Section by serving on the United States and DTSC a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by Settling Defendant.  The Statement of Position shall

specify Settling Defendant's position as to whether formal dispute resolution should proceed under Paragraph 68 (Record Review) or 69.

b.      Within 30 days after receipt of Settling Defendant's Statement of Position, EPA will serve on Settling Defendant its Statement of Position, including, but not limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by EPA.  EPA's Statement of Position shall include a statement as to whether formal dispute resolution should proceed under Paragraph 68 (Record Review) or Paragraph 69.  Within 30 days after receipt of EPA's Statement of Position, Settling Defendant may submit a Reply.  In the event of a dispute between EPA and the Settling Defendant, DTSC shall have the option to submit a Statement of Position, and DTSC's Statement of Position shall be part of the administrative record.

c.      If there is disagreement between EPA and Settling Defendant as to whether dispute resolution should proceed under Paragraph 68 (Record Review) or 69, the parties to the dispute shall follow the procedures set forth in the paragraph determined by EPA to be applicable.  However, if Settling Defendant ultimately appeals to the Court to resolve the dispute, the Court shall determine which paragraph is applicable in accordance with the standards of applicability set forth in Paragraphs 68 and 69.

68.   <u>Record Review</u>.  Formal dispute resolution for disputes pertaining to the selection or adequacy of any response action and all other disputes that are accorded review on the administrative record under applicable principles of administrative law shall be conducted pursuant to the procedures set forth in this Paragraph.  For purposes of this Paragraph, the adequacy of any response action includes, without limitation, the adequacy or appropriateness of plans, procedures to implement plans, or any other items requiring approval by EPA under this Consent Decree, and the adequacy of the performance of response actions taken pursuant to this Consent Decree.  Nothing in this Consent Decree shall be construed to allow any dispute by Settling Defendant regarding the validity of the ROD's provisions.

a.   An administrative record of the dispute shall be maintained by EPA and shall contain all statements of position, including supporting documentation, submitted pursuant to this Section.  Where appropriate, EPA may allow submission of supplemental statements of position by the parties to the dispute.

b.   The Director of the Superfund Division, EPA Region IX, will issue a final administrative decision resolving the dispute based on the administrative record described in Paragraph 68.a.  This decision shall be binding

83

upon Settling Defendant, subject only to the right to seek judicial review pursuant to Paragraphs 68.c and 68.d.

        c.      Any administrative decision made by EPA pursuant to Paragraph 68.b shall be reviewable by this Court, provided that a motion for judicial review of the decision is filed by Settling Defendant with the Court and served on all Parties within ten days after receipt of EPA's decision.  The motion shall include a description of the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of this Consent Decree.  The United States may file a response to Settling Defendant's motion.

        d.      In proceedings on any dispute governed by this Paragraph, Settling Defendant shall have the burden of demonstrating that the decision of the Superfund Division Director is arbitrary and capricious or otherwise not in accordance with law.  Judicial review of EPA's decision shall be on the administrative record compiled pursuant to Paragraph 68.a.

    69.    Formal dispute resolution for disputes that neither pertain to the selection or adequacy of any response action nor are otherwise accorded review on the administrative record under applicable principles of administrative law, shall be governed by this Paragraph.

a.      Following receipt of Settling Defendant's Statement of Position submitted pursuant to Paragraph 67, the Director of the Superfund Division, EPA Region IX, will issue a final decision resolving the dispute.  The Superfund Division Director's decision shall be binding on Settling Defendant unless, within ten days after receipt of the decision, Settling Defendant files with the Court and serves on the parties a motion for judicial review of the decision setting forth the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of the Consent Decree.  The United States may file a response to Settling Defendant's motion.

b.      If Settling Defendant contests payment of any DTSC Future Response Costs, Settling Defendant shall comply with the procedures set forth in this Subparagraph.  Prior to requesting formal dispute resolution pursuant to this Subparagraph, Settling Defendant shall notify DTSC's assigned Project Manager and attempt to informally resolve this dispute with DTSC's Project Manager and branch chief.

(1)      If the dispute cannot be resolved informally within twenty (20) days, then Settling Defendant shall provide a written request for formal dispute resolution which shall describe all issues in dispute and shall set forth the reasons for the dispute, both factual and legal.  The

85

written request for formal dispute resolution and any supporting

documentation shall be sent to:

> Special Assistant for Cost Recovery and Reimbursement Policy
> Department of Toxic Substances Control
> P. O. Box 806
> Sacramento, California  95812-0806

Copies of the written request for formal dispute resolution and any

supporting documentation shall also be sent to those persons designated by

DTSC to receive notices and submissions in Section XXVI of this Consent

Decree.  A decision on the billing dispute will be rendered by the Special

Assistant for Cost Recovery and Reimbursement Policy or other DTSC

designee applying the terms of this Consent Decree and applicable federal

and state law.

(2)    The decision by the Special Assistant for Cost Recovery

and Reimbursement Policy or designee shall be binding on Settling

Defendant unless, within thirty (30) days of the receipt of the decision,

Settling Defendant files with the Court and serves on DTSC a motion for

judicial review of the decision setting forth the matter in dispute, the efforts

made by the Parties to resolve it, the relief requested, and the schedule, if

any, within which the dispute must be resolved to ensure orderly implementation of the Consent Decree.

c.    Notwithstanding Paragraph M (CERCLA Section 113(j) Record Review of ROD and Work) of Section I (Background), judicial review of any dispute governed by this Paragraph shall be governed by applicable principles of law.

70.    The invocation of formal dispute resolution procedures under this Section shall not extend, postpone, or affect in any way any obligation of Settling Defendant under this Consent Decree, not directly in dispute, unless EPA or the Court agrees otherwise.  Stipulated penalties with respect to the disputed matter shall continue to accrue but payment shall be stayed pending resolution of the dispute as provided in Paragraph 78.  Notwithstanding the stay of payment, stipulated penalties shall accrue from the first day of noncompliance with any applicable provision of this Consent Decree.  In the event that Settling Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section XX (Stipulated Penalties).

## XX.    STIPULATED PENALTIES

71.    Settling Defendant shall be liable for stipulated penalties in the amounts set forth in Paragraphs 72 and 73 to the United States and DTSC

(penalties to be split between the Plaintiffs with 80% of penalties to be paid to the United States and 20% of penalties to be paid to DTSC) for failure to comply with the requirements of this Consent Decree specified below, unless excused under Section XVIII (Force Majeure).  "Compliance" by Settling Defendant shall include completion of all payments and activities required under this Consent Decree, or any plan, report, or other deliverable approved under this Consent Decree, in accordance with all applicable requirements of law, this Consent Decree, the SOW, and any plans, reports, or other deliverables approved under this Consent Decree and within the specified time schedules established by and approved under this Consent Decree.

72.   Stipulated Penalty Amounts - Work (Including Payments and Excluding Plans, Reports, and Other Deliverables).

a.   The following stipulated penalties shall accrue per violation per day for any noncompliance identified in Paragraph 72.b:

| Penalty Per Violation Per Day | Period of Noncompliance |
| --- | --- |
| $ 800 | 1st through 14th day |
| $ 2,500 | 15th through 30th day |
| $ 4,000 | 31st day and beyond |

b.   Compliance Milestones.

(1)     Payment for Past Response Costs or DTSC Past Response Costs;

(2)     Payments for Future Response Costs or DTSC Future Response Costs;

(3)     Initiation of Implementation of Remedial Action pursuant to Paragraph 11.c;

(4)     Failure to make best efforts to secure an access agreement pursuant to Paragraph 24.a(1);

(5)     Failure to make best efforts to secure execution and recordation of any Proprietary Controls pursuant to Paragraph 24.a(2);

(6)     Failure to make best efforts to secure subordination of any prior liens or encumbrances as required by Paragraph 24.b;

(7)     Failure to comply with Section III.A.3. of the SOW regarding implementation of a General Plan footnote; and

(8)     Failure to establish or maintain the performance guarantee required by Paragraph 41.

73.    <u>Stipulated Penalty Amounts - Plans, Reports, and Other Deliverables</u>. The following stipulated penalties shall accrue per violation per day for failure to

89

submit timely or adequate reports or other plans or deliverables required pursuant

to the Consent Decree and/or SOW:

Penalty Per Violation Per Day     Period of Noncompliance

    $ 400                                    1st through 14th day

    $ 700                                    15th through 30th day

    $ 1,500                                31st day and beyond

74.     In the event that EPA assumes performance of a portion or all of the

Work pursuant to Paragraph 88 (Work Takeover), Settling Defendant shall be

liable for a stipulated penalty in the amount of $5,500,000.  Stipulated penalties

under this Paragraph are in addition to the remedies available under Paragraphs 45

(Funding for Work Takeover) and 88 (Work Takeover).

75.     All penalties shall begin to accrue on the day after the complete

performance is due or the day a violation occurs and shall continue to accrue

through the final day of the correction of the noncompliance or completion of the

activity.  However, stipulated penalties shall not accrue:  (a) with respect to a

deficient submission under Section XI (EPA Approval of Plans, Reports, and Other

Deliverables), during the period, if any, beginning on the 31st day after EPA's

receipt of such submission until the date that EPA notifies Settling Defendant of

any deficiency; (b) with respect to a decision by the Director of the Superfund

Division, EPA Region IX, under Paragraph 68.b or 69.a of Section XIX (Dispute Resolution), during the period, if any, beginning on the 21st day after the date that Settling Defendant's reply to EPA's Statement of Position is received until the date that the Director issues a final decision regarding such dispute; or (c) with respect to judicial review by this Court of any dispute under Section XIX (Dispute Resolution), during the period, if any, beginning on the 31st day after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute.  Nothing in this Consent Decree shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

76.    Following EPA's determination that Settling Defendant has failed to comply with a requirement of this Consent Decree, or DTSC's determination that Settling Defendant has failed to comply with Paragraph 51.c or Paragraph 52.c, EPA or DTSC, as appropriate, may give Settling Defendant written notification of the same and describe the noncompliance.  EPA or DTSC may send Settling Defendant a written demand for the payment of any associated stipulated penalties.  However, penalties shall accrue as provided in the preceding Paragraph regardless of whether EPA or DTSC has notified Settling Defendant of a violation.

77.    All penalties accruing under this Section shall be due and payable to the United States and DTSC within 60 days after Settling Defendant's receipt from

EPA of a demand for payment of the penalties, unless Settling Defendant invokes the Dispute Resolution procedures under Section XIX (Dispute Resolution) within the 60 day period.  All payments to the United States under this Section shall indicate that the payment is for stipulated penalties and shall be made in accordance with Paragraph 55.b (Instructions for Future Response Cost Payments). All payments to DTSC under this Section shall be made in accordance with Paragraph 52.c.

78.     Penalties shall continue to accrue as provided in Paragraph 75 during any dispute resolution period, but need not be paid until the following:

a.     If the dispute is resolved by agreement of the Parties or by a decision of EPA (or DTSC under Paragraph 69.b) that is not appealed to this Court, accrued penalties determined to be owed shall be paid to EPA and DTSC within 30 days after the agreement or the receipt of EPA's (or DTSC's) decision or order;

b.     If the dispute is appealed to this Court and the United States and/or DTSC prevails in whole or in part, Settling Defendant shall pay all accrued penalties determined by the Court to be owed to EPA and DTSC within 60 days after receipt of the Court's decision or order, except as provided in Paragraph 78.c;

c.     If the District Court's decision is appealed by any Party, Settling Defendant shall pay all accrued penalties determined by the District Court to be owed to the United States and DTSC into an interest-bearing escrow account, established at a duly chartered bank or trust company that is insured by the FDIC, within 60 days after receipt of the Court's decision or order.  Penalties shall be paid into this account as they continue to accrue, at least every 60 days.  Within 15 days after receipt of the final appellate court decision, the escrow agent shall pay the balance of the account to EPA and DTSC or to Settling Defendant to the extent that they prevail.

79.     If Settling Defendant fails to pay stipulated penalties when due, Settling Defendant shall pay Interest on the unpaid stipulated penalties as follows: (a) if Settling Defendant has timely invoked dispute resolution such that the obligation to pay stipulated penalties has been stayed pending the outcome of dispute resolution, Interest shall accrue from the date stipulated penalties are due pursuant to Paragraph 78 until the date of payment; and (b) if Settling Defendant fails to timely invoke dispute resolution, Interest shall accrue from the date of demand under Paragraph 77 until the date of payment.  If Settling Defendant fails to pay stipulated penalties and Interest when due, the United States or DTSC may institute proceedings to collect the penalties and Interest.

80.    The payment of penalties and Interest, if any, shall not alter in any way Settling Defendant's obligation to complete the performance of the Work required under this Consent Decree.

81.    Nothing in this Consent Decree shall be construed as prohibiting, altering, or in any way limiting the ability of the United States or the State to seek any other remedies or sanctions available by virtue of Settling Defendant's violation of this Consent Decree or of the statutes and regulations upon which it is based, including, but not limited to, penalties pursuant to Section 122(*l*) of CERCLA, 42 U.S.C. § 9622(*l*), provided, however, that the United States shall not seek civil penalties pursuant to Section 122(*l*) of CERCLA for any violation for which a stipulated penalty is provided in this Consent Decree, except in the case of a willful violation of this Consent Decree.

82.    Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive any portion of stipulated penalties that have accrued pursuant to this Consent Decree.

## XXI.  COVENANTS BY PLAINTIFFS

83.    <u>Covenants for Settling Defendant by United States</u>.  In consideration of the actions that will be performed and the payments that will be made by Settling Defendant under this Consent Decree, and except as specifically provided

94

in Paragraph 87 (General Reservations of Rights), the United States covenants not

to sue or to take administrative action against Settling Defendant pursuant to

Sections 106 and 107(a) of CERCLA for the Work, Past Response Costs, and

Future Response Costs.  These covenants shall take effect upon the receipt by EPA

of the payment required by Paragraph 51.a (Payments for Past Response Costs)

and any Interest or stipulated penalties due thereon under Paragraph 57 (Interest)

or Section XX (Stipulated Penalties).  These covenants are conditioned upon the

satisfactory performance by Settling Defendant of its obligations under this

Consent Decree.  These covenants extend only to Settling Defendant and to

Settling Defendant's corporate parents and subsidiaries identified in Appendix F,

and to Settling Defendant's successors, but only to the extent that the alleged

liability of the corporate parent, subsidiary or successor is based on its status and in

its capacity as a corporate parent, subsidiary or successor of Settling Defendant and

not to the extent that the liability arose independently of the alleged liability of the

Settling Defendant.  These covenants do not extend to any other person.

84.　　Covenant for Settling Federal Agency.  In consideration of the

payments that will be made by the United States on behalf of Settling Federal

Agency pursuant to Paragraph 53 and the 2014 Settlement Agreement, and except

as specifically provided in Paragraph 87 (General Reservations of Rights), EPA

covenants not to take administrative action against Settling Federal Agency

95

pursuant to Sections 106 and 107(a) of CERCLA for the Work, Past Response Costs, and Future Response Costs.  EPA's covenant shall take effect upon the receipt by EPA of written confirmation from the Settling Federal Agency that the Settling Federal Agency has reimbursed Settling Defendant for Settling Federal Agency's share of EPA's Past Response Costs pursuant to Paragraph 53.  EPA's covenant is conditioned upon the satisfactory performance by Settling Federal Agency of its obligations under this Consent Decree and the 2014 Settlement Agreement and upon Settling Defendant's satisfactory performance of the Work. EPA's covenant extends to Settling Federal Agency as well as any other federal government entity, or its successor, whose potential liability arises out of the production of materials at the Site prior to 1956, and does not extend to any other person.

85.  <u>Covenants for Settling Defendant by DTSC</u>.  In consideration of the actions that will be performed and the payments that will be made by Settling Defendant under this Consent Decree, and except as specifically provided in Paragraph 87 (General Reservations of Rights), DTSC covenants not to sue or take administrative action against Settling Defendant pursuant to Section 107(a) of CERCLA and California Health and Safety Code Sections 25323.5, 25355.5, and 25360 relating to the Work, DTSC Past Response Costs, or DTSC Future Response Costs.  These covenants shall take effect upon the receipt by DTSC of

the payment required by Paragraph 51.c (Payments for DTSC Past Response

Costs) and any Interest or stipulated penalties due thereon under Paragraph 57

(Interest) or Paragraph 72.b(1) (Stipulated Penalties).  These covenants are

conditioned upon the satisfactory performance by Settling Defendant of the Work.

Any Work Takeover by EPA under Paragraph 88 of this Consent Decree shall

constitute unsatisfactory performance of the Work for purposes of this Paragraph

85 (Covenants for Settling Defendant by DTSC), and Paragraph 86 (Covenants for

Settling Federal Agency by DTSC).  These covenants extend only to Settling

Defendant and to Settling Defendant's corporate parents and subsidiaries,

identified in Appendix F, and Settling Defendant's successors, but only to the

extent that the alleged liability of the corporate parent, subsidiary or successor is

based on its status and in its capacity as a corporate parent, subsidiary or successor

of Settling Defendant and not to the extent that the liability arose independently of

the alleged liability of the Settling Defendant.  These covenants do not extend to

any other person.

      86.     <u>Covenants for Settling Federal Agency by DTSC</u>.

      In consideration of the payments that will be made by the United States on

behalf of Settling Federal Agency pursuant to Paragraph 53 and the 2014

Settlement Agreement, and except as specifically provided in this Paragraph 86

and Paragraph 87 (General Reservations of Rights), DTSC covenants not to sue or

take administrative action against Settling Federal Agency pursuant to Section 107(a) of CERCLA and California Health and Safety Code Sections 25323.5, 25355.5, and 25360 relating to the Work, DTSC Past Response Costs, or DTSC Future Response Costs. DTSC's covenants shall take effect upon the receipt by DTSC of DTSC Past Response Costs pursuant to Paragraph 51.c. DTSC's covenants are conditioned upon the satisfactory performance by Settling Federal Agency of its obligations under this Consent Decree and the 2014 Settlement Agreement and upon Settling Defendant's satisfactory performance of the Work. Any Work Takeover by EPA under Paragraph 88 shall constitute unsatisfactory performance of the Work for purposes of this Paragraph 86**.** Notwithstanding any other provision of this Consent Decree and in addition to its reservation of rights under Paragraph 87, DTSC reserves, and this Consent Decree is without prejudice to, DTSC's right to pursue the action titled *California Department of Toxic Substances Control v. United States, et al.*, to seek to compel Settling Federal Agency to pay DTSC for its Future Response Costs if, at any time, EPA implements Work Takeover under Paragraph 88. DTSC's covenants extend to the Settling Federal Agency, as well as to any other federal government entity, or its successor, if also a federal government entity, whose potential liability arises out of the production of materials at the Site for the United States prior to 1956, and do not extend to any other person.

87.  <u>General Reservations of Rights</u>.  The United States and the State reserve, and this Consent Decree is without prejudice to, all rights against Settling Defendant, with respect to all matters not expressly included within Plaintiffs' covenants.  EPA and the State reserve, and this Consent Decree is without prejudice to, all rights against Settling Federal Agency, with respect to all matters not expressly included within Plaintiffs' covenants.  Notwithstanding any other provision of this Consent Decree, the United States and the State reserve all rights against Settling Defendant; and EPA and the State reserve, and this Consent Decree is without prejudice to, all rights against Settling Federal Agency, with respect to:

a.  liability for failure by Settling Defendant or Settling Federal Agency to meet a requirement of this Consent Decree;

b.  liability arising from the past, present, or future disposal, release, or threat of release of Waste Material outside of the Site;

c.  liability based on the ownership of the Site by Settling Defendant or Settling Federal Agency when such ownership commences after signature of this Consent Decree by Settling Defendant or Settling Federal Agency;

d.  liability based on the operation of the Site by Settling Defendant when such operation commences after signature of this Consent Decree

99

by Setting Defendant and does not arise solely from Settling Defendant's performance of the Work and liability based on the operation of the Site by Settling Federal Agency when such operation commences after signature of this Consent Decree by Settling Federal Agency;

       e.     liability based on Settling Defendant's or Settling Federal Agency's transportation, treatment, storage, or disposal, or arrangement for transportation, treatment, storage, or disposal of Waste Material at or in connection with the Site, other than as provided in the ROD, the Work, or otherwise ordered by EPA, after signature of this Consent Decree by Settling Defendant or Settling Federal Agency;

       f.     liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

       g.     criminal liability;

       h.     liability for violations of federal or state law that occur during or after implementation of the Work; and

       i.     liability, prior to achievement of Performance Standards in accordance with Paragraph 12 for additional response actions that EPA determines are necessary to achieve and maintain Performance Standards or to carry out and

maintain the effectiveness of the remedy set forth in the ROD, but that cannot be required pursuant to Paragraph 13 (Modification of SOW or Related Work Plans);

j.      liability for additional operable units or the final response action at the Del Amo Superfund Site, including but not limited to the Waste Pits OU (OU2), the Dual Site Groundwater OU (OU3), and the areas known as Properties 29 and 34; and

k.      liability for costs that the United States and DTSC will incur regarding the Site but that are not within the definition of Future Response Costs or DTSC Future Response Costs.

88.    <u>Work Takeover</u>.

a.      In the event EPA determines that Settling Defendant has (1) ceased implementation of any portion of the Work, or (2) is seriously or repeatedly deficient or late in its performance of the Work, or (3) is implementing the Work in a manner that may cause an endangerment to human health or the environment, EPA may issue a written notice ("Work Takeover Notice") to Settling Defendant.  Any Work Takeover Notice issued by EPA will specify the grounds upon which such notice was issued and will provide Settling Defendant a period of 10 days within which to remedy the circumstances giving rise to EPA's issuance of such notice.

b.     If, after expiration of the ten-day notice period specified in Paragraph 88.a, Settling Defendant has not remedied to EPA's satisfaction the circumstances giving rise to EPA's issuance of the relevant Work Takeover Notice, EPA may at any time thereafter assume the performance of all or any portion(s) of the Work as EPA deems necessary ("Work Takeover").  EPA will notify Settling Defendant in writing (which writing may be electronic) if EPA determines that implementation of a Work Takeover is warranted under this Paragraph 88.b.  Funding of Work Takeover costs is addressed under Paragraph 45.

c.     Settling Defendant may invoke the procedures set forth in Paragraph 68 (Record Review), to dispute EPA's implementation of a Work Takeover under Paragraph 88.b.  However, notwithstanding Settling Defendant's invocation of such dispute resolution procedures, and during the pendency of any such dispute, EPA may in its sole discretion commence and continue a Work Takeover under Paragraph 88.b until the earlier of (1) the date that Settling Defendant remedies, to EPA's satisfaction, the circumstances giving rise to EPA's issuance of the relevant Work Takeover Notice, or (2) the date that a final decision is rendered in accordance with Paragraph 68 (Record Review) requiring EPA to terminate such Work Takeover.

89.     Notwithstanding any other provision of this Consent Decree, the

102

United States and the State retain all authority and reserve all rights to take any and all response actions authorized by law.

## XXII. COVENANTS BY SETTLING DEFENDANT AND SETTLING FEDERAL AGENCY

90.     Covenants by Settling Defendant.  Subject to the reservations in Paragraph 93, Settling Defendant covenants not to sue and agrees not to assert any claims or causes of action against the United States or the State with respect to the Work, past response actions regarding the Site except for those relating to Operable Unit 3, Past Response Costs, Future Response Costs, DTSC Past Response Costs, DTSC Future Response Costs, Settling Defendant's Past Response Costs, Settling Defendant's Future Response Costs, and this Consent Decree, including, but not limited to:

a.     any direct or indirect claim for reimbursement from the EPA Hazardous Substance Superfund through CERCLA Sections 106(b)(2), 107, 111, 112 or 113, or any other provision of law;

b.     any claims under CERCLA Sections 107 or 113, RCRA Section 7002(a), 42 U.S.C. § 6972(a), or state law regarding the Work, past response actions regarding the Site, Past Response Costs, Future Response Costs, DTSC Past Response Costs, DTSC Future Response Costs, Settling Defendant's

Past Response Costs, Settling Defendant's Future Response Costs, and this Consent Decree; or

c.    any claims arising out of response actions at or in connection with the Site, including any claim under the United States Constitution, the State Constitution, the Tucker Act, 28 U.S.C. §1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, or at common law.

91.    <u>Covenant by Settling Federal Agency</u>.  Settling Federal Agency agrees not to assert any direct or indirect claim for reimbursement from the EPA Hazardous Substance Superfund through CERCLA Sections 106(b)(2), 107, 111, 112, or 113, or any other provision of law with respect to the Work, past response actions regarding the Site, Past Response Costs, Future Response Costs, Settling Defendant's Past Response Costs, Settling Defendant's Future Response Costs, and this Consent Decree.  This covenant does not preclude demand for reimbursement from the Superfund of costs incurred by a Settling Federal Agency in the performance of its duties (other than pursuant to this Consent Decree) as lead or support agency under the National Contingency Plan (40 C.F.R. Part 300).

92.    Except as provided in Paragraph 102 (Res Judicata and Other Defenses), the covenants in this Section shall not apply if the United States or the State brings a cause of action or issues an order pursuant to any of the reservations

in Section XXI (Covenants by Plaintiffs), other than in Paragraphs 87.a (claims for failure to meet a requirement of the Consent Decree), 87.g (criminal liability), and 87.h (violations of federal/state law during or after implementation of the Work), but only to the extent that Settling Defendant's claims arise from the same response action, response costs, or damages that the United States or DTSC is seeking pursuant to the applicable reservation.

93.     Settling Defendant reserves, and this Consent Decree is without prejudice to, claims against the United States (1) to enforce the terms of the 2014 Settlement Agreement; or (2) subject to the provisions of Chapter 171 of Title 28 of the United States Code, and brought pursuant to any statute other than CERCLA or RCRA and for which the waiver of sovereign immunity is found in a statute other than CERCLA or RCRA, for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States, as that term is defined in 28 U.S.C. § 2671, while acting within the scope of his or her office or employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. However, the foregoing shall not include any claim based on EPA's selection of response actions, or the oversight or approval of Settling Defendant's plans, reports, other deliverables or activities.  Settling Defendant also reserves, and this

105

Consent Decree is without prejudice to, contribution claims against Settling

Federal Agency in the event any claim is asserted by the United States or the State

against Settling Defendant pursuant to any of the reservations in Section XXI

(Covenants by Plaintiffs) other than in Paragraphs 87.a (claims for failure to meet a

requirement of the Consent Decree), 87.g (criminal liability), and 87.h (violations

of federal/state law during or after implementation of the Work), but only to the

extent that Settling Defendant's claims arise from the same response action,

response costs, or damages that the United States or the State is seeking pursuant to

the applicable reservation.

94.    Nothing in this Consent Decree shall be deemed to constitute

preauthorization of a claim within the meaning of Section 111 of CERCLA,

42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

95.    <u>Claims Against De Micromis Parties</u>.  Settling Defendant agrees not

to assert any claims and to waive all claims or causes of action (including but not

limited to claims or causes of action under Sections 107(a) and 113 of CERCLA)

that it may have for all matters relating to the Site against any person where the

person's liability to Settling Defendant with respect to the Site is based solely on

having arranged for disposal or treatment, or for transport for disposal or treatment,

of hazardous substances at the Site, or having accepted for transport for disposal or

treatment of hazardous substances at the Site, if all or part of the disposal,

106

treatment, or transport occurred before April 1, 2001, and the total amount of

material containing hazardous substances contributed by such person to the Site

was less than 110 gallons of liquid materials or 200 pounds of solid materials.

96.     The waiver in Paragraph 95 (Claims Against De Micromis Parties)

shall not apply with respect to any defense, claim, or cause of action that Settling

Defendant may have against any person meeting the criteria in Paragraph 95 if

such person asserts a claim or cause of action relating to the Site against Settling

Defendant.  This waiver also shall not apply to any claim or cause of action against

any person meeting the criteria in Paragraph 95 if EPA determines:

a.     that such person has failed to comply with any EPA requests for

information or administrative subpoenas issued pursuant to Section 104(e) or

122(e) of CERCLA, 42 U.S.C. §9604(e) or 9622(e), or Section 3007 of RCRA, 42

U.S.C. §6927, or has impeded or is impeding, through action or inaction, the

performance of a response action or natural resource restoration with respect to the

Site, or has been convicted of a criminal violation for the conduct to which this

waiver would apply and that conviction has not been vitiated on appeal or

otherwise; or

b.     that the materials containing hazardous substances contributed

to the Site by such person have contributed significantly, or could contribute

significantly, either individually or in the aggregate, to the cost of response action or natural resource restoration at the Site.

97.   Claims Against *De Minimis* and Ability to Pay Parties.  Settling Defendant agrees not to assert any claims or causes of action and to waive all claims or causes of action (including but not limited to claims or causes of action under Sections 107(a) and 113 of CERCLA) that it may have for response costs relating to the Site against any person that has entered or in the future enters into a final CERCLA Section 122(g) *de minimis* settlement, or a final settlement based on limited ability to pay, with EPA with respect to the Site.  This waiver shall not apply with respect to any defense, claim, or cause of action that Settling Defendant may have against any person if such person asserts a claim or cause of action relating to the Site against Settling Defendant.

XXIII.   EFFECT OF SETTLEMENT; CONTRIBUTION

98.   Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree. Each of the Parties expressly reserves any and all rights (including, but not limited to, pursuant to Section 113 of CERCLA, 42 U.S.C. § 9613), defenses, claims, demands, and causes of action that each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a

Party hereto.  Nothing in this Consent Decree diminishes the right of the United States, pursuant to Section 113(f)(2) and (3) of CERCLA, 42 U.S.C. § 9613(f)(2)-(3), to pursue any such persons to obtain additional response costs or response action and to enter into settlements that give rise to contribution protection pursuant to Section 113(f)(2).

99.    The Parties agree, and by entering this Consent Decree this Court finds, that this Consent Decree constitutes a judicially approved settlement for purposes of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and that Settling Defendant and Settling Federal Agency are entitled, as of the Effective Date, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, or as may be otherwise provided by law, for "matters addressed" in this Consent Decree.  The "matters addressed" in this Consent Decree are the Work, Past Response Costs, Future Response Costs, DTSC Past Response Costs, DTSC Future Response Costs, Settling Defendant's Past Response Costs, and Settling Defendant's Future Response Costs.

100.   Settling Defendant shall, with respect to any suit or claim brought by it for matters related to this Consent Decree, notify the United States and DTSC in writing no later than 60 days prior to the filing of such suit or claim.

101.   Settling Defendant shall, with respect to any suit or claim brought against it for matters related to this Consent Decree, notify in writing the United States and DTSC within 10 days after service of the complaint on Settling Defendant.  In addition, Settling Defendant shall notify the United States and DTSC within ten days after service or receipt of any Motion for Summary Judgment and within 10 days after receipt of any order from a court setting a case for trial.

102.   <u>Res Judicata and Other Defenses</u>.  In any subsequent administrative or judicial proceeding initiated by the United States or DTSC for injunctive relief, recovery of response costs, or other appropriate relief relating to the Site, Settling Defendant and, with respect to an action by DTSC, Settling Federal Agency shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or DTSC in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the covenants not to sue set forth in Section XXI (Covenants by Plaintiffs).

# XXIV.     ACCESS TO INFORMATION

103.   Settling Defendant shall provide to EPA and DTSC, upon request, copies of all records, reports, documents, and other information (including records, reports, documents, and other information in electronic form) (hereinafter referred to as "Records") within its possession or control or that of its contractors or agents relating to the implementation of this Consent Decree, including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information regarding the Work.  Settling Defendant shall also make available to EPA and DTSC, for purposes of investigation, information gathering, or testimony, its employees, agents, or representatives with knowledge of relevant facts concerning the performance of the Work.

104.   Business Confidential and Privileged Documents.

a.     Settling Defendant may assert business confidentiality claims covering part or all of the Records submitted to Plaintiffs under this Consent Decree to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. § 2.203(b).  Records determined to be confidential by EPA will be afforded the protection specified in 40 C.F.R. Part 2, Subpart B.  If no claim of confidentiality accompanies Records when they

are submitted to EPA and DTSC, or if EPA has notified Settling Defendant that the Records are not confidential under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2, Subpart B, the public may be given access to such Records without further notice to Settling Defendant.

b.      Settling Defendant may assert that certain Records are privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Settling Defendant asserts such a privilege in lieu of providing Records, it shall provide Plaintiffs with the following:  (1) the title of the Record; (2) the date of the Record; (3) the name, title, affiliation (e.g., company or firm), and address of the author of the Record; (4) the name and title of each addressee and recipient; (5) a description of the contents of the Record; and (6) the privilege asserted by Settling Defendant.  If a claim of privilege applies only to a portion of a Record, the Record shall be provided to the United States and DTSC in redacted form to mask the privileged portion only.  Settling Defendant shall retain all Records that it claims to be privileged until the United States or DTSC has had a reasonable opportunity to dispute the privilege claim and any such dispute has been resolved in the Settling Defendant's favor.

c.      No Records created or generated pursuant to the requirements of this Consent Decree shall be withheld from the United States or DTSC on the grounds that they are privileged or confidential.

105.   No claim of confidentiality or privilege shall be made with respect to any data, including, but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, or engineering data, or any other documents or information evidencing conditions at or around the Site.

## XXV. RETENTION OF RECORDS

106.   Until 10 years after Settling Defendant's receipt of EPA's notification pursuant to Paragraph 48.b (Completion of the Work), Settling Defendant shall preserve and retain all non-identical copies of Records (including Records in electronic form) now in its possession or control or that come into its possession or control that relate in any manner to its liability under CERCLA with respect to the Site, provided, however, that Settling Defendant, if potentially liable as owner or operator of the Site must retain, in addition, all Records now in its possession or control or that come into its possession or control that relate to the liability of any other person under CERCLA with respect to the Site.  Settling Defendant must also retain, and instruct its contractors and agents to preserve, for the same period of time specified above all non-identical copies of the last draft or final version of any Records (including Records in electronic form) now in its possession or control or that come into its possession or control that relate to the performance of the Work (other than routine, internal administrative correspondence), provided, however, that Settling Defendant (and its contractors and agents) must retain, in

addition, copies of all data generated during the performance of the Work and not contained in the aforementioned Records required to be retained.  Each of the above record retention requirements shall apply regardless of any corporate retention policy to the contrary.

107.   The United States acknowledges that Settling Federal Agency (a) is subject to all applicable Federal record retention laws, regulations, and policies; and (b) has certified that it has fully complied with any and all EPA and DTSC requests for information regarding the Site pursuant to Sections 104(e) and 122(e) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e), and Section 3007 of RCRA, 42 U.S.C. § 6927, and California law.

108.   At the conclusion of this record retention period, Settling Defendant shall notify the United States and DTSC at least 90 days prior to the destruction of any such Records, and, upon request by the United States or DTSC, Settling Defendant shall deliver any such Records to EPA or DTSC.  Settling Defendant may assert that certain Records are privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Settling Defendant asserts such a privilege, it shall provide Plaintiffs with the following: (a) the title of the Record; (b) the date of the Record; (c) the name, title, affiliation (e.g., company or firm), and address of the author of the Record; (d) the name and title of each addressee and recipient; (e) a description of the subject of the Record; and (f) the privilege

114

asserted by Settling Defendant.  If a claim of privilege applies only to a portion of a Record, the Record shall be provided to the United States and DTSC in redacted form to mask the privileged portion only.  Settling Defendant shall retain all Records that it claims to be privileged until the United States or DTSC has had a reasonable opportunity to dispute the privilege claim and any such dispute has been resolved in the Settling Defendant's favor.  However, no Records created or generated pursuant to the requirements of this Consent Decree shall be withheld on the grounds that they are privileged or confidential.

109.   Settling Defendant certifies that, to the best of its knowledge and belief, after reasonable inquiry, it has not altered, mutilated, discarded, destroyed, or otherwise disposed of any Records (other than identical copies) relating to its potential liability regarding the Site since the earlier of notification of potential liability by the United States or DTSC or the filing of suit against it regarding the Site and that it has fully complied with any and all EPA and DTSC requests for information regarding the Site pursuant to Sections 104(e) and 122(e) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e), and Section 3007 of RCRA, 42 U.S.C. § 6927, and California law.

XXVI.     NOTICES AND SUBMISSIONS

110.   Whenever, under the terms of this Consent Decree, written notice is required to be given or a report or other document is required to be sent by one Party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing.  All notices and submissions shall be considered effective upon receipt, unless otherwise provided.  Written notice as specified in this Section shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to the United States, EPA, Settling Federal Agency, DTSC, and Settling Defendant, respectively.  Notices required to be sent to EPA, and not to the United States, under the terms of this Consent Decree should not be sent to the U.S. Department of Justice.

As to the United States:          Chief, Environmental Enforcement
                                 Section
                                 Environment and Natural Resources
                                 Division
                                 U.S. Department of Justice
                                 P.O. Box 7611
                                 Washington, D.C.  20044-7611
                                 Re: DJ # 90-11-2-933/4

and:                             Chief, Environmental Defense Section
                                 Environment and Natural Resources
                                 Division
                                 U.S. Department of Justice

116

P.O. Box 23986
Washington, D.C.  20026-3986
Re: DJ # 90-11-3-21 and # 90-11-3-1204

As to EPA:                    Director, Superfund Division
                              United States Environmental Protection
                              Agency
                              Region IX
                              75 Hawthorne St.
                              San Francisco, CA  94105

and:                          Dante Rodriguez
                              EPA Project Coordinator
                              United States Environmental Protection
                              Agency
                              Region IX
                              75 Hawthorne St.
                              San Francisco, CA  94105

As to the Regional Financial   Regional Financial Management Officer
Management Officer:           United States Environmental Protection
                              Agency
                              Region IX
                              75 Hawthorne St.
                              San Francisco, CA  94105


As to DTSC:                   Safouh Sayed
                              State Project Coordinator
                              Department of Toxic Substances Control
                              5796 Corporate Avenue
                              Cypress, CA 90630

As to Settling Defendant:     Carol Campagna
                              Settling Defendant's Project Coordinator
                              Shell Oil Products US
                              20945 S. Wilmington Ave.
                              Carson, CA 90749

117

Kimberly Lesniak
Shell Oil Company
Senior Legal Counsel,
Legal Department - Downstream
Manufacturing & Environmental
Regulatory
One Shell Plaza
910 Louisiana St.
Houston, TX 77002

## XXVII.      RETENTION OF JURISDICTION

111.   This Court retains jurisdiction over both the subject matter of this Consent Decree, Settling Federal Agency, and Settling Defendant for the duration of the performance of the terms and provisions of this Consent Decree for the purpose of enabling any of the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or modification of this Consent Decree, or to effectuate or enforce compliance with its terms, or to resolve disputes in accordance with Section XIX (Dispute Resolution), or to allow DTSC to pursue the action titled *California Department of Toxic Substances Control v. United States, et al.*, against Settling Federal Agency in the event that EPA implements Work Takeover under Paragraph 88 of this Consent Decree.

118

XXVIII.     APPENDICES

112.   The following appendices are attached to and incorporated into this

Consent Decree:

"Appendix A" is the ROD.

"Appendix B" is the SOW.

"Appendix C" is the description and/or map of the Site.

 "Appendix D" is the draft form of Proprietary Controls.

"Appendix E" is the draft performance guarantee.

"Appendix F" is the list of Settling Defendant's corporate parents and

subsidiaries.

XXIX.     COMMUNITY INVOLVEMENT

113.   If requested by EPA or DTSC, Settling Defendant shall participate in

community involvement activities pursuant to the community involvement plan to

be developed by EPA.  EPA will determine the appropriate role for Settling

Defendant under the Plan.  Settling Defendant shall also cooperate with EPA and

DTSC in providing information regarding the Work to the public.  As requested by

EPA or DTSC, Settling Defendant shall participate in the preparation of such

information for dissemination to the public and in public meetings that may be held

or sponsored by EPA or DTSC to explain activities at or relating to Operable Unit 1.  Costs incurred by the United States under this Section, including the costs of any technical assistance grant under Section 117(e) of CERCLA, 42 U.S.C. § 9617(e), shall be considered Future Response Costs that Settling Defendant shall pay pursuant to Section XVI (Payments for Response Costs).

## XXX. MODIFICATION

114.   Except as provided in Paragraph 13 (Modification of SOW or Related Work Plans), material modifications to this Consent Decree, including the SOW, shall be in writing, signed by the United States and Settling Defendant, and shall be effective upon approval by the Court.  Except as provided in Paragraph 13, non-material modifications to this Consent Decree, including the SOW, shall be in writing and shall be effective when signed by duly authorized representatives of the United States and Settling Defendant.  All modifications to the Consent Decree, other than the SOW, also shall be signed by DTSC, or a duly authorized representative of DTSC, as appropriate.  A modification to the SOW shall be considered material if it fundamentally alters the basic features of the selected remedy within the meaning of 40 C.F.R. § 300.435(c)(2)(ii).  Before providing its approval to any modification to the SOW, the United States will provide DTSC with a reasonable opportunity to review and comment on the proposed modification.

115.   Nothing in this Consent Decree shall be deemed to alter the Court's power to enforce, supervise, or approve modifications to this Consent Decree.

XXXI.   LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

116.   This Consent Decree shall be lodged with the Court for a period of not less than 30 days for public notice and comment in accordance with Section 122(d)(2) of CERCLA, 42 U.S.C. § 9622(d)(2), and 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations that indicate that the Consent Decree is inappropriate, improper, or inadequate. Settling Defendant consents to the entry of this Consent Decree without further notice.

117.   If for any reason the Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any Party and the terms of the agreement may not be used as evidence in any litigation between the Parties.

XXXII.   SIGNATORIES/SERVICE

118.   The undersigned representative of Settling Defendant to this Consent Decree and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice and the undersigned

121

representative for DTSC each certify that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party to this document.

119.   Settling Defendant agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree unless the United States has notified Settling Defendant in writing that it no longer supports entry of the Consent Decree.

120.   Settling Defendant shall identify, on the attached signature page, the name, address, and telephone number of an agent who is authorized to accept service of process by mail on behalf of that Party with respect to all matters arising under or relating to this Consent Decree. Settling Defendant agrees to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including, but not limited to, service of a summons.  Settling Defendant need not file an answer to the complaints in this action unless or until the Court expressly declines to enter this Consent Decree.

### XXXIII.     FINAL JUDGMENT

121.   This Consent Decree and its appendices constitute the final, complete, and exclusive agreement and understanding among the Parties regarding the

settlement embodied in the Consent Decree.  The Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree or in the 2014 Settlement Agreement.

122.   Upon entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between and among the United States, DTSC, and Settling Defendant.  The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED THIS 14th DAY OF  January , 2016.

_____

United States District Judge

Signature Page for Consent Decree regarding the Del Amo Facility Superfund Site

**FOR THE UNITED STATES OF AMERICA:**

8/24/2015
**Date**

John C. Cruden
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice
Washington, D.C.  20530

9/25/15
**Date**

Valerie K. Mann
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611

9/25/15
**Date**

Mark A. Rigau
Senior Trial Counsel
Environmental Defense Section
Environment and Natural Resources Division
U.S. Department of Justice
301 Howard Street, Suite 1050
San Francisco, CA 94105

124

1  Signature Page for Consent Decree regarding the Del Amo Facility Superfund Site

2

3

4  Date

Enrique Manzanilla

5  Director, Superfund Division, Region IX

U.S. Environmental Protection Agency

6  75 Hawthorne St.

7  San Francisco, CA  94105

8

9

10  Date

Sarah E. Mueller

Assistant Regional Counsel

11  U.S. Environmental Protection Agency

12  Region IX

75 Hawthorne St.

13  San Francisco, CA  94105

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

125

1   Signature Page for Consent Decree regarding the Del Amo Facility Superfund Site

2

3                                          **FOR THE STATE OF CALIFORNIA**

4                                          **DEPARTMENT OF TOXIC**

5                                          **SUBSTANCES CONTROL**

6

7      Sept. 16, 2015

8      Date                                John Scandura

9                                          Branch Chief
                                           Brownfields and Environmental Restoration
10                                         Program
                                           Department of Toxic Substances Control
11                                         5796 Corporate Avenue
                                           Cypress, CA  90630
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                      126

Signature Page for Consent Decree regarding the Del Amo Facility Superfund Site

**FOR SHELL OIL COMPANY, INC.**

9-25-15
Date

Name (print):
Title:
Address:

Agent Authorized to Accept
Service on Behalf of Above-
signed Party:

CT Corporation System
818 West Seventh Street, 2nd Floor
Los Angeles, CA 90017
Phone: 213-627-8252

127